NICKEY, APPELLANT, *v.* BROWN, APPELLEE.

(No. 10440—Decided July 14, 1982.)

*Mr. Paul G. Perantinides* and *Mr. Michael Baker,* for appellant.
*Mr. Gary Banas,* for appellee.

VICTOR, J. Earl Nickey, plaintiff-appellant, had been a patient of Dr. Lauren Brown, defendant-appellee, for a number of years. In February 1970, Dr.

Brown diagnosed Nickey as a diabetic and prescribed medication and a special diet to control the disease. By May 1970, Nickey's blood sugar had stabilized at an acceptable level, and he discontinued his visits to Dr. Brown.

On December 23, 1977, Nickey came to Brown's office complaining of pain in the left thigh. Nickey indicated to Brown that he (Nickey) had recently suffered a blow to the thigh. Brown diagnosed the problem as a sprain and prescribed an anti-inflammatory medication. On December 26, 1977, Nickey went to the emergency room at Barberton Citizen's Hospital complaining of extreme pain in his left thigh and knee. He had a temperature of 101.3 degrees but no local temperature increase in the thigh and knee, no tenderness of the left calf muscles and good left femoral pulses. He was diagnosed as having a muscle spasm, given medication to alleviate the pain and told to see his family physician.

On December 27, 1977, Nickey returned to Brown's office with a stiff and swollen left knee, increased pain, a temperature of 100 degrees and general malaise. At this time Brown considered the possibility of a fracture and tapped and aspirated the knee joint, removing bloody fluid. The simple test that Brown performed on the bloody fluid indicated the absence of fracture. The presence of bloody fluid in the joint was consistent with Brown's previous diagnosis of sprain. Continuing to treat for sprain, Brown injected Decadron into the joint, prescribed an oral diabetes medicine and disposed of the bloody fluid without further testing.

On December 29, 1977, Nickey again returned to Brown's office for treatment of his knee. At that time, Brown extracted pus from the knee joint. Brown discarded the pus without having it tested and recommended that Nickey be hospitalized but failed to make arrangements for immediate admittance. Nickey arrived at the emergency room on his own in-itiative at 7:30 a.m. on December 30, and requested admission. Brown was notified by the hospital and authorized the admission. At this time, Brown diagnosed an infection in the joint and prescribed ampicillin, a broad spectrum antibiotic.

On January 4, 1978, one of the consulting orthopedic surgeons retapped Nickey's knee and had the aspirated pus cultured in the hospital laboratory. The test results indicated the presence of a bacteria resistant to treatment with ampicillin. A different antibiotic was prescribed and an incision and drainage was done on the knee. However, the infection remained uncontrolled resulting in the disarticulation of Nickey's left leg on January 26, 1978.

Nickey sued Brown alleging medical malpractice that proximately caused the loss of his left leg. The case was arbitrated in December 1979, pursuant to R.C. 2711.21. The arbitrators unanimously found in favor of Nickey and awarded him $465,000 in damages. Brown refused to accept the decision of the arbitrators. The pleadings were amended as required by R.C. 2711.21, and the matter was tried to a jury. The jury found for Brown and judgment was entered on the verdict. Nickey appeals that judgment.

## Assignment of Error I

"The trial court erred in refusing to allow the plaintiff to call expert witnesses in the absence of a violation of the rules of discovery or a court order."

The record indicates that defendant filed supplementary answers to interrogatories on October 16, 1980, informing plaintiff that Drs. McFadden, Miller, DeFreest, Hunter, Weygandt, and Glazer were possible defense witnesses. In early January 1981, Brown's attorney wrote a letter to Nickey's attorney stating that Dr. Weygandt would definitely testify at trial. Since Dr. Weygandt was a potential defendant, he had not been contacted by plaintiff prior to this time. Upon receipt of

the letter, Nickey's attorney telephoned Brown's attorney to notify him that, since Weygandt was going to testify, plaintiff intended to procure additional experts to refute Weygandt's opinion. On January 23, 1981, defendant moved the trial court for an order excluding all expert testimony on behalf of plaintiff, except the testimony of Dr. Parker who had testified for plaintiff at the arbitration hearing.

On January 27, 1981, Nickey's attorney again called Brown's attorney and informed him of the names and addresses of two additional expert witnesses. On January 28, a pretrial conference was held. At that time, plaintiff was prepared to give the names, addresses and specialties of all anticipated expert witnesses in compliance with Rule 8.01 of the Local Rules of the Summit County Court of Common Pleas. Also on January 28, plaintiff filed supplemental answers to interrogatories adding Drs. Lawrence and Skelleran to plaintiff's list of expert witnesses. The answers were served on defendant by regular mail.

On February 2, 1981, immediately before the trial began, defendant's attorney renewed his motion to exclude, contending that he had received written notice of the additional experts that very morning and that to allow such testimony would constitute unfair surprise. The court limited plaintiff to calling Drs. Parker and DeFreest for his case-in-chief. Plaintiff argues that the court's exclusion was error. We agree.

Civ. R. 37(D) provides:

"If a party * * * fails * * * to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, * * * the court in which the action is pending on motion and notice may make such orders in regard to the failure as are just, and among others it may take any action authorized under subsections (a), (b), and (c) of subdivision (B)(2) of this rule. * * *"

Sanctions permitted under Civ. R. 37(B)(2)(a), (b), and (c) include stipulating facts in accordance with the claim of the moving party, refusing to allow the disobedient party to support or oppose designated claims or defenses, excluding the undiscovered evidence, striking portions of the pleadings, dismissing the action, staying the proceedings and rendering a judgment by default. Thus, under Civ. R. 37(D), the trial court may immediately sanction noncompliance without a previous court order compelling discovery as long as the sanction is just.

The exclusion of reliable and probative evidence is a severe sanction and should be invoked only when clearly necessary to enforce willful noncompliance or to prevent unfair surprise. *State* v. *O'Neil* (Feb. 17, 1982), Wayne App. No. 1771, unreported. Further, under Civ. R. 37 (D), exclusion is only one of several means of remedying unfair surprise. For example, the court may grant a continuance for the purpose of giving defendant the opportunity to depose the undisclosed witnesses and to determine their opinions. Alternatively, the court can permit the testimony, allowing defendant to renew his motion when and if he is, in fact, surprised by the expert's opinion. *Hair* v. *Certified Laboratories* (Aug. 3, 1979), Summit App. No. 9160, unreported.

The record in the instant case fails to indicate that the testimony of Drs. Lawrence and Skelleran would have been so surprising to defendant as to warrant the exclusion. Of import is the fact that defendant's attorney had actual notice of the names and addresses of plaintiff's experts approximately a week before trial yet made no attempt to contact either witness or to demand a statement of the substance of their testimony pursuant to Civ. R. 37 (A). Under these circumstances, we believe that the trial court abused its discretion in excluding plaintiff's evidence.

The record indicates that the court below confined its ruling to the exclusion

of the testimony only in plaintiff's case-in-chief, presumably permitting plaintiff to call Drs. Lawrence and Skelleran on rebuttal.

31 Corpus Juris Secundum 818, Evidence, Section 2, defines "rebutting evidence" as follows:

"Rebutting evidence is that which is given to explain, repel, counteract, or disprove facts given in evidence by the adverse party. It is that evidence which has become relevant or important only as an effect of some evidence introduced by the other side. * * *"

The scope of rebuttal testimony is limited by the evidence adduced by the opposing party. Thus, the opportunity to rebut defendant's evidence is not an adequate substitute for introducing evidence in the case-in-chief.

Further we note the difficulties inherent in medical malpractice actions with getting doctors' reports and depositions due to time constraints imposed on doctors by their practices. In the instant case, the fact that Dr. Weygandt was a potential defendant further limited plaintiff's ability to take his deposition, thus, necessitating additional expert testimony in plaintiff's case-in-chief. Under these circumstances, we find that the exclusion of plaintiff's witnesses from his case-in-chief is prejudicial error and sustain the first assignment of error.

Although our disposition of this first assignment of error reverses the judgment, in the interest of judicial economy and in accordance with App. R. 12 (A), we will now pass upon the remaining assignments of error.

### Assignment of Error II

"The trial court erred in allowing the introduction of depositions into evidence, over plaintiff's objections, when the offering party had not complied with Ohio Rules of Civil Procedure 32 (A)."

Civ. R. 32 (A) states:

"Use of depositions. Every deposition intended to be presented as evidence must be filed at least one day before the day of trial or hearing unless for good cause shown the court permits a later filing."

The record indicates that the videotaped depositions of Drs. McFadden and Miller were not filed pursuant to Civ. R. 32 (A). However, there is no indication that the failure to file was a bad faith attempt to withhold discoverable evidence. To the contrary, plaintiff's attorney was present at the taking of both depositions and cross-examined the witnesses. Dr. McFadden's deposition was shown at the arbitration hearing with plaintiff's permission. The record further indicates that plaintiff had actual notice that defendant intended to use Dr. Miller's deposition at trial. Thus, we conclude that defendant's failure to comply with Civ. R. 32 (A) was an inadvertent mistake.

Still, the rule clearly makes filing of the depositions mandatory. *Bryson* v. *Fleming* (Jan. 9, 1980), Medina App. No. 894, unreported; *Kull* v. *Karson* (June 22, 1977), Medina App. No. 699, unreported. However, Civ. R. 32 (A) must be read in conjunction with Civ. R. 32 (D)(4) which provides:

"As to completion and return of deposition. Errors and irregularities in the manner in which the testimony is transcribed or the deposition is prepared, signed, certified, sealed, indorsed, transmitted, filed, or otherwise dealt with by the officer under Rule 30 and Rule 31 are waived unless a motion to suppress the deposition or some part thereof is made with reasonable promptness after such defect is, or with due diligence might have been, ascertained."

As indicated in the Staff Note to Civ. R. 32, the filing requirement is designed to put the opposing party on notice that the depositions might be used in evidence. The waiver provisions of Civ. R. 32 (D) are designed to limit objections. The Staff Note states:

"Objections which could have been obviated by timely assertion are waived. Currently all exceptions to the deposition

except incompetency and relevancy are waived unless made and filed before the commencement of the trial. * * *"

In the instant case, defense counsel indicated in his opening statement made on the first day of trial that a color videotape of Dr. Miller's testimony would be shown and that the jury would hear Dr. McFadden's testimony. Plaintiff did not at this time object to the admission of the unfiled depositions. Rather, on the afternoon of the third day of trial, after the court had indicated that defendant could show the tapes, instructed the jury as to the function of the taped depositions, and asked the bailiff to turn off the courtroom lights, plaintiff's attorney objected to their admissibility under Civ. R. 32(A).

Construing plaintiff's objection as the motion to suppress required by Civ. R. 32 (D)(4), we do not believe the motion was made with reasonable promptness. In the instant case, due diligence required plaintiff to move to suppress when the unfiled depositions were mentioned in defendant's opening statements. A motion at this point would have allowed defendant an opportunity to remedy the oversight and to obviate the objection. Thus, we hold that plaintiff's failure to move with reasonable promptness waived his objection. See *Valdez* v. *United States* (C.A. 9, 1963), 326 F. 2d 598, 600.

Further, plaintiff has not demonstrated that he was surprised by the contents of the depositions or that their introduction as evidence changed his trial strategy or perception of the case. We agree with the court in *Houser* v. *Snap-On Tools Corp.* (D.Md. 1962), 202 F. Supp. 181, 188, which held:

"The error complained of in no way affects the value of the depositions as evidence. So, even if it cannot be said that there has been a waiver of the right to object — and it very well might — defendant's slight oversight does not justify so drastic an action on the part of the Court."

## Assignments of Error III and VI

"III. Where a party has made admissions against interest, or judicial admissions, regarding his negligence and failure to meet the standard of care, a question of law and not of fact is raised and the trial court has a plain duty to sustain a motion for a directed verdict, which the trial court erred in failing to do.

"VI. Where a defendant is guilty of negligence as a matter of law on the basis of his own admissions, and the properly admitted expert testimony demonstrates proximate cause, the trial court erred in refusing to grant a directed verdict on the issue of proximate cause."

Plaintiff argues that the trial court is required to sustain a motion for directed verdict when the opposing party's testimony amounts to an admission of negligence. *Winkler* v. *Columbus* (1948), 149 Ohio St. 39 [36 O.O. 364]. The *Winkler* court said at pages 43-44:

"* * * But where plaintiff herself makes admissions against interest during her cross-examination *which admissions show clearly that her negligence contributed directly to her injury* (one of the precise, ultimate facts in issue) a question of law and not of fact is raised and the trial court has a plain duty to sustain a motion for a directed verdict. * * *" (Emphasis added.)

In *Winkler,* the plaintiff testified that she had seen the defect in the sidewalk shortly before she tripped over it and fell. In the instant case, Dr. Brown's answers on cross-examination are not clear admissions of negligence so as to mandate a directed verdict. Brown testified that he agreed with plaintiff's attorney that certain testing procedures comport with good medical practice. However, Brown did not say that such procedures were the only means of complying with the standard of care required of a physician. Rather, he explained why he believed that his diagnosis and treatment of plaintiff's injuries were also commensurate with good medical practice.

Expert witnesses expressed varied opinions as to the proximate cause of plaintiff's disarticulation. Dr. Parker testified that Brown's negligent treatment of Nickey's infection was the only reason for the disarticulation. Dr. Weygandt regarded Nickey's infection as quite rare and uncontrollable with any antibiotic. In Dr. Weygandt's opinion, different treatment would not have altered the result.

Since reasonable minds could disagree as to the issues of negligence and proximate cause, the trial court properly allowed the jury to resolve the factual dispute.

### Assignment of Error IV

"The trial court erred in preventing plaintiff from calling the arbitrators on direct examination where the general rule in Ohio is that an arbitrator's testimony is admissible except to impeach the award and Ohio Revised Code § 2711.21 merely specifically changed that rule to allow cross-examination by a non-offering, or losing, party."

R.C. 2711.21 provides in relevant part:

"(C) If the decision of the arbitration board is not accepted by all parties thereto, the pleadings shall be amended to aver both the fact that the controversy was submitted to an arbitration board and the decision of the arbitration board. The decision of the arbitration board, and any dissenting opinion written by any board member, shall be admitted into evidence at trial upon the offer of any party * * *.

"* * *

"(D) Any party who has not made the offer stated in division (C) of this section may subpoena any member or members of the arbitration board for purposes of cross-examination."

The Supreme Court of Ohio, in *Beatty* v. *Akron City Hospital* (1981), 67 Ohio St. 2d 483, 487 [21 O.O.3d 302], construed this section to mean:

"Additionally, the statute provides for a number of safeguards to the litigants in the submission of the arbitrators' decision to the jury. Under the section, the board's decision is admissible only if the trial court concludes that the hearing and decision are free from prejudice to either party. Additionally, the statute specifically affords the non-offering party the right to subpoena and cross-examine any of the arbitrators during the trial. *No similar right is provided the offering party.*" (Emphasis added.)

R.C. 2711.21 does not confer upon the prevailing party the right to have the arbitrators repeat the testimony adduced at the hearing or to give their opinions as to the witnesses' credibility. Rather, arbitrators' testimony on direct examination is limited to defining the issues tried by them, the claims included in the award and the time and the circumstances under which the award was made. *Corrigan* v. *Rockefeller* (1902), 67 Ohio St. 354. See, also, 6 Ohio Jurisprudence 3d 90, Arbitration and Award, Section 91. None of these matters was at issue in this case. At trial, plaintiff's counsel asserted that the issues before the jury were the same issues presented to the arbitrators. The claims for damages were the same. The time and circumstances were not challenged.

Thus, the trial court properly prevented plaintiff from calling the arbitrators for his case-in-chief.

### Assignment of Error V

"The trial court erred in its refusal to charge the jury regarding the 'expert' character of the arbitration panel's decision in the face of plaintiff's request based on *Beatty* v. *Akron City Hospital.*"

In *Beatty* v. *Akron City Hospital, supra,* at 490-491, the Supreme Court quoted with approval the following guidelines for jury instructions:

"As appropriately stated by the Wisconsin Supreme Court in *State, ex rel. Strykowski,* v. *Wilkie, supra* [(1978), 81 Wis. 2d 491, 261 N.W. 2d 434], at pages 528-529:

" 'The proper application of this rule, as with any rule of evidence, is the responsibility of the trial court. No boiler plate jury instruction can be drafted to cover all factual situations. However, the trial court shall instruct the jury with clarity and simplicity to the end that the jurors are impressed with the fact that the panel's findings and order are in no way binding upon the jury, but are to be accorded such weight, and such weight only, as the jury may choose to give them. The trial court shall further instruct the jury to the effect that the jury remains the final arbiter of the issues raised and the facts presented and that its determination, based upon its consideration of *all* the evidence, will prevail.' " (Emphasis *sic.*)

The trial court's instructions comport with these guidelines. We find no error.

The judgment is reversed and the cause is remanded for further proceedings consistent with the law and this opinion.

*Judgment reversed*
*and cause remanded.*

MAHONEY, P.J., and BELL, J., concur.