Plaintiff-appellant, Linda McKinney, appeals from a decision of the Butler County Court of Common pleas denying her motion for a new trial following a jury verdict in favor of defendant-appellee, Dr. Joseph Solomito. We affirm.
At approximately 5:00 a.m. and again briefly at approximately 6:00 a.m. on February 11, 1994, appellee was consulted by telephone by a Middletown Regional Hospital emergency room doctor, Dr. Fran Schlatter, concerning the diagnosis of appellant's decedent, Lanny McKinney. McKinney had arrived at the emergency room at 4:00 a.m. He reported chest pain at approximately 12:30 a.m., followed by abdominal pain. After discussing test results, appellee told Dr. Schlatter during both telephone calls that he did not think the cause of McKinney's pain was cardiac in nature. Dr. Schlatter observed that McKinney reported his pain was relieved after a second Maalox dose. McKinney's family physician was contacted at 7:30 a.m. and told Dr. Schlatter he would see McKinney that morning. McKinney was discharged from the emergency room at approximately 8:00 a.m. McKinney died later that morning due to an aortic dissection.
Appellant's medical malpractice action against Dr. Schlatter, appellee, and Middletown Acute Care Specialists was initially tried in April 1996. That trial resulted in a directed verdict for appellee and a jury verdict for Dr. Schlatter. The trial court directed the verdict for appellee because it found, as a matter of law, that there was no physician-patient relationship. This court reversed that decision inMcKinney v. Schlatter (1997), 118 Ohio App.3d 328. This court held that:
 a physician-patient relationship can exist by implication between an emergency room patient and an on call physician who is consulted by the patient's physician but who has never met, spoken with, or consulted the patient when the on call physician (1) participates in the diagnosis of the patient's condition, (2) participates in or prescribes a course of treatment for the patient, and (3) owes a duty to the hospital, staff or patient for whose benefit he is on call.
Id. at 336-37.
The case was therefore remanded for further proceedings. A second jury trial, with appellee as the only defendant, commenced on March 30, 1998. The issues for the jury included whether appellee had the type of relationship with the patient and the hospital outlined by this court's prior opinion, and if so, whether he breached the applicable standard of care.
Although appellee acknowledged that he was on call for his practice on February 11, 1994, the day in question, he did not state that he was on call for Middletown Regional Hospital. Dr. Schlatter, on the other hand, testified that she called[1]
appellee because he was the cardiologist on call.
After the conclusion of testimony, appellee's counsel moved that certain on call records from Middletown Regional Hospital be admitted into evidence. These records indicated that appellee's practice had been on call for cardiology on February 10, 1994, but that Cardiology South, another service, was on call on February 11, 1994.[2] (Dr. Schlatter's emergency room shift was from 7:00 p.m. on February 10, 1994 until 7:00 a.m. on February 11, 1994.)
The trial court conducted a hearing on the admissibility of the records. Appellant objected that the records had not been listed as an exhibit in the court's required pretrial order. Appellee's counsel stated that the records had been provided to appellant in response to appellant's second request for production of documents propounded on August 7, 1995.
Appellant then objected that appellee had already testified that he was not on call for the hospital, and that Dr. Schlatter had already testified that appellee was on call. Appellant's counsel stated that had he known such a record was to be introduced he would have questioned Dr. Schlatter about it. Dr. Schlatter had testified via videotape deposition and apparently could not be recalled.
The judge indicated that he was not pleased with the way the records were coming in, but that as the records had been provided to appellant in response to a discovery request, they would probably be admissible. Appellant's counsel acknowledged that he had received the records and had placed them "in a different part of my file than where it normally should have been." Appellant agreed to stipulate to the authenticity of the records, but did not waive objection to their admission based upon appellee's failure to list the records as an exhibit on the pretrial order. Appellee's counsel sought a stipulation that the records had been in appellant's hands since 1995. The trial court found that such a stipulation would not be relevant to the case.
The on call records were then admitted as a joint exhibit. The record on appeal does not reflect how appellant's counsel treated the records in closing. In his closing, appellee's counsel referred to the records as follows:
 Dr. Solomito was not on call. He testified to that and now we have documentary evidence to prove it. Joint Exhibit I, which Mr. Holschuh [appellant's counsel] never made any reference to throughout the whole case until he got up before you on argument, will be back there with you ladies and gentlemen.
* * *
 Mr. Holschuh engages in the time old technique of trying to impugn peoples integrity. He tried to ignore the fact that Dr. Solomito had specifically said that he wasn't on call. He didn't say one word about it until now.
The jury received instructions concerning the on call issue which reflected our prior decision.[3] The jury was instructed in pertinent part that a physician-patient relationship can exist if the physician "owes a duty to the hospital, staff or patient for whose benefit he is on call." After beginning its deliberations, the jury requested answers to two questions: 1) Must all three conditions exist to establish [physician-patient] relationship? The judge answered this question affirmatively. 2) If not technically "on call" but accepts responsibility of phone call does that satisfy condition #3? The judge responded: "Whether a [physician-patient] relationship exists is a question you must decide. I would refer you back to the instructions of law as given." The jury then returned a verdict in favor of appellee, finding that there was no physician-patient relationship. Appellant's motion for a new trial was denied. Appellant raises a single assignment of error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT BY ADMITTING INTO EVIDENCE THE ON-CALL RECORDS OF THE MIDDLETOWN REGIONAL HOSPITAL.
Appellant specifically argues that she was unable to question witnesses concerning the records and that appellee's closing argument twisted the facts concerning their admission. Appellant does not maintain that appellee violated a specific discovery rule. Rather, she argues that appellee violated that portion of the court's pretrial order which required the parties to provide a list of exhibits to be used at trial. InPaugh v. Farmer Menorah Home for Jewish Aged (1984), 15 Ohio St.3d 44, the Ohio Supreme Court held that compliance with local pretrial procedure rules implicates concerns similar to those protected by the Rules of Civil Procedure. Therefore, we analyze this issue under the applicable standards for discovery violations. See, e.g., Pingue v. Porter (Sept. 11, 1997), Franklin App. No. 96APE11-1613, unreported.
A trial court may exclude evidence when the failure to produce that evidence results from an intentional noncompliance with the rules of discovery. See Jones v. Murphy (1984),12 Ohio St.3d 84. The court may also exclude evidence even when the failure to comply with the discovery rules results merely from neglect, a change in trial strategy, or inadvertent error. See Huffman v. Hair Surgeons, Inc. (1985), 19 Ohio St.3d 83.
Although the trial court may exclude evidence as a sanction for a party's failure to provide discovery or comply with an applicable court order, it is not required to do so. Barhorstv. Sonoco Products Co. (Sept. 12, 1997), Miami App. No. 96CA28, unreported. A trial court has broad discretion when imposing such sanctions and a reviewing court reviews these rulings only for an abuse of discretion. Nakoff v. Fairview Gen. Hosp.
(1996), 75 Ohio St.3d 254. The term abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
The exclusion of reliable and probative evidence is a severe sanction and should be invoked only when clearly necessary to enforce willful noncompliance or to prevent unfair surprise.Nickey v. Brown (1982), 7 Ohio App.3d 32, 34. "Ordinarily, it is the policy in Ohio to impose the least severe sanction * * *, unless the conduct of the [party] is so negligent, irresponsible, contumacious or dilatory as to outweigh the policy that disposition of litigation should be upon its merits." Evans v. Smith (1991), 75 Ohio App.3d 160, 163.
Here, the trial court was asked to exclude the relevant evidence of on call records as a sanction for appellee's failure to list them as an exhibit on the pretrial order. This severe sanction was the only one requested, and the trial court did not abuse its discretion in declining to impose it. Although appellant was possibly prejudiced by the "eleventh-hour" admission of these records, the court balanced the factors weighing for and against exclusion appropriately. The records had been provided to appellant in response to her own discovery request. They were stipulated to be authentic. Under these circumstances, we can not find that their admission was so "palpably and grossly violative of fact or logic" as to require reversal of the jury's verdict. See Nakoff v. FairviewGeneral Hospital (1996), 75 Ohio St.3d 254.
We agree that appellee's counsel used the records inappropriately in closing. Appellant had objected strenuously to their admission at the end of the trial precisely because they could not then be addressed through witness testimony. The judge had admonished appellee for the omission from the pretrial order and further had specifically found that the amount of time the records had been in appellant's hands was not relevant to the case. Therefore, it was unfair for appellee's counsel to criticize appellant for not addressing the records during the trial. However, these comments came at the beginning of appellee's closing and the balance of the argument was completely within the bounds of propriety.
Appellant did not object during appellee's closing. In civil cases, errors that arise during the course of trial without objection are waived and may not be reviewed on appeal.LeFort v. Century 21-Maitland Realty Co. (1987), 32 Ohio St.3d 121.
The Ohio Supreme Court has stated that "except where counsel, in his opening statement and closing argument to the jury, grossly and persistently abuses his privilege, the trial court is not required to intervene sua sponte to admonish counsel."Snyder v. Stanford (1968), 15 Ohio St.2d 31. Improper comments were made, and appellee even acknowledges that they may have been "artful subterfuge or stretched the limits of propriety." However, in context, the comments did not rise to the level of gross, or especially, persistent abuse. The plain error doctrine is not favored in civil cases and should only be applied in extremely rare cases that involve exceptional circumstances affecting the basic fairness, integrity or public reputation of the judicial process. Callentine v. Central Cab.Co. (Nov. 23, 1998), Warren App. No. 98-03-019, unreported. This is not such a case.
Appellant also argues that the jury's questions indicate that the admission of the records confused them. We find that the jury's questions were appropriately based on the evidence before them. The jury was instructed correctly initially and in response to the questions.
Appellant has not shown that the admission of the records was an abuse of the trial court's discretion. Appellant's sole assignment of error is overruled.
Judgment affirmed.
KOEHLER and WALSH, JJ., concur.
[1] A nurse actually placed the call.
[2] The one page calendar does not indicate any beginning and ending time for the days, therefore the 24-hour period applies.
[3] The jury was instructed in part as follows:
 The first issue that must be decided is whether a physician-patient relationship existed between Lanny McKinney and Dr. Joseph Solomito. A Physician-patient relationship may exist by implication between an emergency room patient and an on-call physician who is consulted by the patient's physician but who has never met, spoken with or consulted the patient when the on-call physician:
 (1) participates in the diagnosis of the patient's condition;
 (2) participates in or prescribes a course of treatment for the patient, and;
 (3) owes a duty to the hospital, staff or patient for whose benefit he is on call.
 Once an on-call physician who has a duty to the hospital, its staff or patients is contacted for the benefit of an emergency room patient and a discussion takes place between the patient's physician and the on-call physician regarding the patient's symptoms, a possible diagnosis and course of treatment, a physician-patient relationship exists between the patient and the on-call physician.