JOURNAL ENTRY AND OPINION
Fourteen-year-old Leviticus Davis appeals from a judgment of the juvenile court, which adjudicated him to be a delinquent child, in connection with the purposefully killing of his eleven-month-old baby, Lashae Davis. On appeal, he asserts that his adjudication of delinquency is against the manifest weight of the evidence; that the court erred when it denied his motion for mistrial; and that the court abused its discretion when it denied his motion to reopen the case. After reviewing the record, we have concluded the arguments presented are not well taken and therefore, we affirm the judgment of the court.
The record reveals that the decedent, eleven-month-old Lashae Davis lived with his parents, fourteen-year-old Leviticus Davis and fifteen-year-old Rhuneta Hightower, at the home of Hightower's parents, 1186 East 87th Street in Cleveland, Ohio. Also living in that home were Rhuneta's parents, Shirley and Randolph Montgomery; her sisters, Apache Hightower and Mary Curry; her niece, Tequisha Preston; the live-in babysitter, Ernisha Abram; and Abram's two children, Frank Woodland and Tyrene Abram.
The record further reveals that during the adjudicatory hearing, the state called ten witnesses: Rhuneta Hightower, Kelly Rowe, Ernisha Abram, Dr. Stela Miron, Dr. Jeffrey Blumer, John Moore, Cleveland Firefighter Patrick Kilbane, Officer Wesley Harris, Detective Gregory King, and Detective Wilmore Larry.
Rhuneta testified that on the morning of February 11, 1998, she gave Lashae a bottle, changed him, and noted that he appeared to be in good health without any bruises. He could stand, move about the house, sit up, and recognize people. She left for school shortly before 8:00 o'clock but returned home later that morning at 9:30 because she did not feel well. When she arrived home, she noticed Ernisha awake in a chair; Leviticus laying on the floor watching television; and Lashae laying on the floor. After picking Lashae up, she noticed a long, thick bruise in the center of his chest, as well as a bruise on his back; she quickly observed that he had stopped breathing and had broken ribs. She instructed Ernisha to first call her sister, then her grandmother, and then 9-1-1. Although emergency personnel instructed them on resuscitating Lashae, they could not do so because they became too emotional. A few minutes later, emergency personnel arrived and transported Lashae to Rainbow Babies and Children's Hospital where doctors pronounced him dead at 10:35.
Kelly Rowe, Rhuneta's best friend, testified that on the morning of February 11, 1998, she telephoned Rhuneta, and approximately fifteen minutes later, arrived at her house to walk to school with her. Kelly went upstairs and saw Leviticus sitting on a bed watching television, with Lashae at his side. Upon seeing Kelly, Lashae stood up and reached out his arms for Kelly to pick him up. Kelly testified that Lashae appeared to be alert and unharmed.
Next, Ernisha Abram testified. She has two children, Frank, who is developmentally delayed, and Tyrene. She admitted that on occasion, she has administered corporal punishment to Frank due to his temper tantrums. Ernisha also stated that on the day Lashae died, Leviticus and Rhuneta argued over money. She recalls Juvis Montgomery, Leviticus' friend, coming into the house, but he did not interact with Lashae and had been in the house for only a few minutes. She further testified that she saw Lashae roll off the couch on two occasions and each time told Leviticus to pick him up, but did not notice any injuries until Rhuneta came home and told her about them.
Dr. Stella Miron performed an autopsy on Lashae. She testified the cause of death had been multiple blunt impacts to the trunk with acute visceral and soft tissue injuries, organizational skeletal injuries, and massive internal bleeding. The internal investigation revealed massive head and chest injuries, as well as severe damage and extensive hemorrhaging around his thymus, lungs, diaphragm, liver, pancreas, and kidney. Dr. Miron also testified that the injuries causing Lashae's death had been administered two to three hours prior to his death.
Dr. Jeffrey Blumer stated that children between the ages of ten and twelve months are able to crawl, stand and recognize voices. When asked whether Ernisha's four-year-old son, Frank, could have inflicted Lashae's injuries, Dr. Blumer stated that a four-year-old child could not generate the force necessary to cause that degree of damage.
John Moore testified that he drove Rhuneta and his granddaughter, Benbetta to school that morning and that they did not wait for Kelly because she had been late.
Cleveland Firefighter Patrick Kilbane testified upon arriving at the home, no one let him into the home and that Leviticus did not stop watching television the entire time he had been inside the home. Kilbane attempted to resuscitate Lashae until an ambulance arrived to transport him to the hospital.
Cleveland Police Officer Wesley Harris testified that when he arrived at Lashae's residence, Lashae appeared limp and palecolored. Officer Harris then entered the home and attempted to interview Leviticus, but, he refused to answer any questions.
Detectives Wilmore Larry and Gregory King interviewed Leviticus twice, once at the hospital and once at the homicide unit. In a statement to the detectives, Leviticus attempted to blame Frank, Ernisha's four-year-old son for causing Lashae's fatal injuries, citing a temper tantrum and claiming Frank pushed a car seat on Lashae's head.
The state also called Detective Gregory King as a rebuttal witness and he testified that he made arrangements to interview Monique Davis, but that she did not keep her appointment.
The defense called two witnesses: Kay May, a forensic scientist, and Monique Davis, a sixth-grader and sister of appellant, who testified that she saw Ernisha Abram punch Lashae in his arm and leg on at least one occasion two to three months before he died.
May testified that she tested a car seat and several blankets taken from the home. She found blood which matched Leviticus Davis, on one of the blankets, but she did not know how long it had been there or how it got there.
Subsequently, the state charged Leviticus Davis with delinquency by way of murder, child endangering, involuntary manslaughter and felonious assault. The guardians ad litem moved the court to consolidate all cases involving the persons living at the same home as Leviticus, and the court granted that motion without objection by defense counsel. The case proceeded to an adjudicatory hearing and the court adjudicated Davis delinquent by virtue of murder and merged the other counts into the verdict. The court then committed him to the Department of Youth Services until his twenty-first birthday. He now appeals and sets forth three assignments of error for our review.
 I. THE DECISION OF THE TRIAL COURT ADJUDICATING APPELLANT DELINQUENT BY VIRTUE OF MURDER IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Davis maintains the court erred when it adjudicated him delinquent by way of murder because the state failed in its burden to prove all the essential elements of the crime.
The state urges that because it satisfied its burden of proof and demonstrated that Davis had been delinquent by way of murder, the court correctly adjudicated him delinquent.
The issue, then, concerns whether the juvenile court's adjudication of delinquency is against the manifest weight of the evidence.
In State v. Martin (1983), 20 Ohio App.3d 172, the court stated:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
Additionally, the court in State v. Thompkins (1997), 78 Ohio St.3d 380, stated:
 Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicated clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them.
Further, in Tibbs v. Florida (1982), 457 U.S. 31, the court stated:
 A reversal based on the weight of the evidence, moreover, can occur only after the State both has presented sufficient evidence to support conviction and has persuaded the jury to convict.
Having carefully reviewed all the testimony of the witnesses who testified, including the defense witnesses, we recognize that no dispute exists with regard to the purposeful killing of Lashae Davis between the hours of 8:00 and 9:30 on the morning of February 11, 1998. The state established, through the coroner's testimony and the autopsy protocol, that Lashae's death had been caused by multiple blunt force impacts to the trunk and that these blows had been administered between the time that Rhuneta Hightower left for school at 8:00 o'clock and returned at 9:30 that morning.
Thus, the only remaining issue for determination by the juvenile court concerned the identification of the perpetrator. By process of elimination and from the testimony of the coroner, Frank Woodland, the son of Ernisha Abram, could not have committed this crime because he did not have the physical strength to do it. Therefore, only two persons could have perpetrated this offense: Ernisha Abram or Leviticus Davis.
The testimony at trial from Detective Wilmur Larry of the Cleveland Police Department revealed that Davis had been in Lashae's presence during the period of Rhuneta Hightower's absence, except for the time he made breakfast for Frank. Further, Ernisha Abram testified that during that period of time, she had been asleep, and her testimony had been corroborated by Rhuneta Hightower and Kelly Rowe. This evidence supports the inference reached by the trial court in this case, that Davis murdered his son. While it is true that Monique Davis testified that she witnessed Ernisha Abram deliver punching blows to the arm or leg of the decedent on other occasions, this testimony from Davis' ten-year-old sister does not necessarily preclude a finding of delinquency in this case.
As stated by the court in its syllabus in State v. Jenks
(1991), 61 Ohio St.3d 259:
 1. * * * When the state relies on circumstantial evidence to prove an essential element of the offense charged, there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction. * * *.
In this case, no dispute exists regarding the purposeful killing of Lashae Davis; the state presented evidence from which the court could infer that Davis perpetrated this crime; Davis himself admitted he had been in the presence of the baby during the period from 8 o'clock to 9:30, when Rhuneta Hightower returned from school and discovered her dead son. Therefore, after reviewing the record, weighing the evidence and all reasonable inferences therefrom, and considering the credibility of the witnesses, we have determined that the court, in resolving conflicts in the evidence, did not clearly lose its way and create a manifest miscarriage of justice. Accordingly, this assignment of error is overruled.
 II. THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT IN FAILING TO GRANT APPELLANT'S MOTION FOR MISTRIAL WHERE THE COURT CONSIDERED EVIDENCE EXTRINSIC TO THE ADJUDICATORY HEARING IN ITS DECISION.
Davis maintains that the court erred in denying his motion for mistrial because it heard evidence pertaining to a complaint filed by Cuyahoga County Children and Family Services in which it sought emergency custody of Ernisha Abram's two children on the basis that the identity of Lashae's murderer remained unknown.
The state, however, maintains the court did not err in denying the motion for mistrial because he failed to object during the trial when his guardian ad litems moved the court to consolidate all cases involving persons who lived in the home with Leviticus Davis.
The issue, then, concerns whether the court erred when it denied the motion for mistrial.
In State v. Glover (1988), 35 Ohio St.3d 18, the court, quotingState v. Widner (1981), 68 Ohio St.2d 188, stated:
 * * * This court has adopted an approach which grants great deference to the trial court's discretion in this area, in recognition of the fact that the trial judge is in the best position to determine whether the situation in his courtroom warrants the declaration of a mistrial.
Further, in State v. Post (1987), 32 Ohio St.3d 380, quotingState v. White (1968), 15 Ohio St.2d 146, the court stated:
 * * * this court indulges "* * * in the usual presumption that in a bench trial in a criminal case the court considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary."
The record reflects that during the probable cause hearing, the guardians ad litem moved the court to consolidate all cases involving the persons who lived in the home with Leviticus Davis and defense counsel assented to the consolidation on the record. Further, the court does not refer to those related matters on the record; hence we conclude the court made its determination of delinquency from the testimony presented during the adjudication hearing. Therefore, we conclude that the court did not err in denying the motion for mistrial. Accordingly, this assignment of error is overruled.
 III. THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY DENYING HIS MOTION TO REOPEN HIS CASE AND TO OFFER RELEVANT AND PROBATIVE EVIDENCE.
Davis maintains the court abused its discretion when it overruled his motion to reopen the case because he had been denied the opportunity to cross-exam Detective King concerning allegations that Ernisha Abrams physically abused Lashae Davis.
The state maintains the court did not abuse its discretion when it overruled this motion because it properly limited the scope of cross-examination.
Here, then, we concern ourselves with whether the court abused its discretion when it overruled the motion to reopen the case, which denied Davis the opportunity to introduce allegations that Ernisha Abram may have physically abused Lashae.
In Dillon v. Bundy (1991), 72 Ohio App.3d 767, the court, citing Yungwirth v. McAvoy (1972), 32 Ohio St.2d 285, stated:
 The denial by a trial court of a motion for a new trial is subject to reversal on appeal only upon demonstration that the trial court abused its discretion. Accordingly, the party claiming error must demonstrate that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
The court in Weimer v. Anzevino (1997), 122 Ohio App.3d 720
stated:
 The standard has been set forth in Nickey v. Brown (1987), 7 Ohio App.3d 32 as follows: Rebutting evidence is that which is given to explain, repel, counteract, or disprove facts given in evidence by the adverse party. It is that evidence which has become relevant or important only as an effect of some evidence introduced by the other side.
Davis sought to reopen his case to introduce evidence, through cross-examination of Detective King, that there had been a report, presented through a statement made by Monique Davis, that would establish a pattern of regular physical abuse by Ernisha Abram. The testimony purportedly would have established that Monique Davis had seen Abram hit and punch Lashae with her fist in the back and leg and that she also witnessed Ernisha's four-year-old son Frank hit Lashae both of his own volition and on his mother's command. Leviticus Davis sought to question Detective King regarding patterns of child abuse.
The record reflects, however, that the state called Detective King on rebuttal for the limited purpose of detailing Monique Davis' efforts to contact the Cleveland Police Department's Homicide Unit in order to provide a statement regarding Ernisha Abram. At no point did the state question Detective King about child abusers or patterns of abuse by child abusers.
After reviewing the proffered testimony, we have concluded that in accordance with Weimer and Nickey, it does not explain, repel, counteract, or disprove facts given in evidence. Therefore, the court did not abuse its discretion in denying the motion to reopen the case. Accordingly, this assignment of error is overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Juvenile Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, J. and JAMES D. SWEENEY. J. CONCUR.
 __________________ PRESIDING JUDGE TERRENCE O'DONNELL