[Cite as *Beard v. St. Vincent Charity Hosp.*, 2017-Ohio-7608.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105245**

# MICHAEL SCOTT BEARD, ET AL.

PLAINTIFFS-APPELLANTS

vs.

# ST. VINCENT CHARITY HOSPITAL, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-14-838125

**BEFORE:** Stewart, J., E.A. Gallagher, P.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** September 14, 2017

**ATTORNEYS FOR APPELLANTS**

Timothy J. Weyls
Jeffrey T. Peters
Michael Chuparkoff
Weyls Peters, L.L.C.
6505 Rockside Road, Suite 105
Independence, OH 44131


**ATTORNEYS FOR APPELLEES**

Christine Santoni
Holly M. Wilson
Reminger Co., L.P.A.
101 West Prospect Avenue, Suite 1400
Cleveland, OH 44115

MELODY J. STEWART, J.:

{¶1} When plaintiff-appellant Michael Scott Beard could not be intubated for general anesthesia preparatory to undergoing bariatric surgery at St. Vincent Charity Hospital, he consulted with defendant-appellee Harvey Tucker, M.D., an otolaryngologist (ear, nose and throat doctor) at MetroHealth Medical Center. Tucker thought that he could successfully intubate Beard for surgery, but in a subsequent bariatric surgery, his attempts to do so failed, causing Tucker to perform a tracheostomy. There were post-surgery complications with the tracheostomy, causing it to become permanent.

{¶2} Beard and his wife, Michelle Beard (we will refer to the plaintiffs collectively as "Beard"), brought this action against Tucker and his employer, defendant-appellee MetroHealth Medical Center,[1] alleging that Tucker failed to obtain Beard's informed consent to the tracheostomy, that Tucker negligently performed it, and that Tucker breached the standard for post-operative care. A jury found in favor of Tucker and MetroHealth. In this appeal from that verdict, Beard complains that the court made various errors with respect to testimony and opinions about a CT scan; that the court erred by refusing to allow opinion testimony from his expert; that the court erred by refusing to direct a verdict in his favor; and that the court erred by allowing MetroHealth to amend its answer to assert the affirmative defense of political subdivision immunity.

I. Expert Testimony

---

[1] The attempted bariatric surgery occurred at St. Vincent Charity Hospital. Although named as a defendant in this action, St. Vincent Charity Hospital was dismissed without prejudice under a Civ.R. 41(A)(1)(a) notice of voluntary dismissal.

**{¶3}** The first, second, third, and fourth assignments of error relate to expert testimony on a CT scan of Beard's throat, taken prior to his consultation with Tucker. Beard brought the CT scan to his consultation with Tucker, but alleged that Tucker either did not review the CT scan or that he read it incorrectly and failed to see that a narrowing of Beard's throat (stenosis) meant that Beard could not be properly intubated. Beard maintains that had Tucker properly reviewed the CT scan before surgery, the standard of care required an explicit, pre-surgery advisement that a tracheostomy would be required — a procedure that he claims he would have refused had he been properly advised.

{¶4} During discovery, Tucker's expert submitted a two-page report that detailed the materials he reviewed when forming his opinion regarding Tucker's alleged breach of the medical standard of care. Not only did the expert's report fail to mention that the expert reviewed the CT scan, the expert agreed in deposition that if called to testify at trial, the substance of what he would testify to was contained within his report. This prompted Beard to file a motion in limine to prevent the expert from testifying to any fact or issue not raised in the report. The court denied the motion subject to reconsideration. At trial, the expert was asked whether, in preparation for forming an opinion, he had reviewed "various radiology studies." Beard objected because the only radiology studies were the CT scans and the expert gave no indication during discovery that his opinions were based on the CT scans. Tucker maintained that the expert testified in deposition that he had reviewed the CT scans before writing his expert report. The court ruled that there was no surprise in allowing the expert to testify and that Beard opened the door to testimony about the CT scan by mentioning it during his case-in-chief.

{¶5} Beard first argues that the court should have disallowed Tucker's expert from testifying about the CT scans because the expert had not divulged an opinion on the matter prior to trial.

**{¶6}** As a general principle, the purpose of pretrial discovery is to prevent unfair surprise. *Krehnbrink v. Testa*, 148 Ohio St.3d 129, 2016-Ohio-3391, 69 N.E.3d 656, ¶ 39. With respect to opinions held by experts, two rules apply: Loc.R. 21.1 of the Court of Common Pleas of Cuyahoga County, General Division and Civ.R. 26(E). Loc.R. 21.1 requires expert opinions to be set forth in a report that states the expert's opinions "as to each issue on which the expert will testify." No testimony or opinions are permitted "on issues not raised in [the] report." Loc.R. 21.1. Civ.R. 26(E) requires supplementation of expert reports based on the subject matter on which the expert is expected to testify. Any action the court takes with respect to either Loc.R. 21.1 or Civ.R. 26(E) is subject to review only for an abuse of the court's discretion. *Di v. Cleveland Clinic Found.*, 2016-Ohio-686, 60 N.E.3d 582, ¶ 73 (8th Dist.); *Maglosky v. Kest*, 8th Dist. Cuyahoga No. 85382, 2005-Ohio-5133, ¶ 46.

**{¶7}** The court did not abuse its discretion by allowing Tucker's expert to testify about the CT scans because (1) there was no indication that the expert intended to mislead, (2) Beard was not surprised by the admission of CT scan testimony, and (3) no prejudice resulted from the admission of the testimony.

{¶8} It is true that the expert did not reference the CT scans as being among the materials he examined before forming his opinion as to whether Tucker breached the relevant standard of care. But the materials the expert stated he reviewed, including Tucker's deposition and the report issued by Beard's expert, extensively referenced the CT scans. In addition, the expert testified in deposition (and after he submitted his report) that he reviewed the CT scans before forming his opinion. By all measures, the CT scans formed a basis for the expert's opinion and his failure to note that fact appears to be nothing more than an omission — the expert testified at deposition that he "forgot" that he reviewed them. There was no evidence of any intent to mislead.

{¶9} The importance of the CT scans proves the absence of surprise. The CT scans were a crucial piece of evidence for both sides: Beard maintained that the scans showed that he had an airway obstruction that would certainly require a tracheostomy (and informed consent); Tucker maintained that the scans showed no obstruction, indicting that intubation could be achieved. Tucker had been extensively deposed on the CT scans. And Beard's own expert submitted a report that gave similar consideration to the CT scans. The extent to which both sides relied on the CT scans was such that it would have been no surprise that Tucker's expert likewise formulated his opinion, in part, by considering them. That the expert's report did not expressly say so was not fatal — Civ.R. 26(E) does not require a party to provide detailed information with regard to the basis for an expert's opinion. *Braxton v. Kilbane*, 8th Dist. Cuyahoga No. 104166, 2017-Ohio-185, ¶ 11.

**{¶10}** Finally, the court's decision to allow the expert to testify about the CT scans did not unfairly prejudice Beard. This was not a case where the expert's testimony was cumulative — the expert's interpretation of the CT scans was pivotal to Tucker's defense. Although the court has discretion to exclude testimony as a sanction under Civ.R. 26(E), exclusion is an "extreme" sanction that should only be used "when clearly necessary to enforce willful non-compliance or to prevent unfair surprise." *Estate of Preston v. Kaiser Permanente*, 8th Dist. Cuyahoga No. 78972, 2001 Ohio App. LEXIS 4988, at 13 (Nov. 8, 2001), citing *Nickey v. Brown*, 7 Ohio App.3d 32, 34, 454 N.E.2d 177 (9th Dist.1982). We acknowledge Beard's argument in his third assignment of error that Tucker's expert reviewed the "wrong version of the images," but even if true, this was not necessarily a reason to exclude the expert's testimony on grounds of prejudice. Beard had ample opportunity to impeach the expert's credibility on the matter, thus belying any assertion that the court acted arbitrarily by allowing the testimony.[2]

**{¶11}** In his fourth assignment of error, Beard complains that the court erred by sustaining an objection to testimony by his expert regarding an opinion that Tucker deviated from the applicable standard of care by using a scalpel to modify tracheostomy tubes.

---

[2] As an alternative basis for allowing Tucker's expert to testify about the CT scans, the court found that Beard opened the door for Tucker's expert to testify about the CT scans by questioning his own expert about the CT scans. Our conclusion that the court did not abuse its discretion by allowing Tucker's expert to testify about the CT scans moots consideration of Beard's second assignment of error that the court abused its discretion by ruling that he opened the door to such testimony. *See* App.R. 12(A)(1)(c).

**{¶12}** Post-operation, Beard had continued problems breathing through the tracheostomy tube that remained in his throat. On several occasions, Tucker used a scalpel to cut openings in the tube to increase the amount of air that moved through the tube. Beard's expert started to express his opinion that doing so was "imprecise and trial and error" and left sharp or serrated edges on the tube, but Tucker objected on grounds that the expert was stating a "new opinion." The court sustained the objection and then conducted an unrecorded sidebar before resuming questioning.

**{¶13}** We agree with Beard that the court erred by sustaining the objection because Beard's expert raised the issue of Tucker modifying the tracheostomy tubes in his report. The report stated:

> Dr. Tucker's care and management of Mr. Beard relative to his post-surgical care and management of Mr. Beard's tracheostomy surgeries performed on 12/04/2012 and 01/18/2013 also fell below the standard of care in that Dr. Tucker's use of different types and sizes of tracheostomy tubes and manipulation of them by cutting windows into the tubes on "trial and error" basis, worsened Mr. Beard's breathing difficulties and agitated and prevented Mr. Beard's trachea from healing, thereby prolonging Mr. Beard's use and dependence on the tracheostomy tube for more than a year (and in fact now permanently), even though Dr. Tucker's records indicate it was to be only "a few months."

**{¶14}** Tucker does not dispute that Beard's expert gave this opinion in his report, but maintains that without any record of the sidebar that occurred following the objection, we must presume the regularity of the court's decision. A presumption of regularity is employed when the record is "silent." *State v. Ward*, 8th Dist. Cuyahoga Nos. 104493 and 104495, 2017-Ohio-933, ¶ 17. The record in this case, however, is not silent — the court refused to allow Beard's expert to offer an opinion based on an articulated objection that the expert was expressing a "new" opinion. It is disingenuous for Tucker to argue that the court did not err by sustaining the objection to previously disclosed opinions held by Beard's expert.

**{¶15}** Nevertheless, we agree with Tucker that the error was harmless under Civ.R. 61, which directs us to "disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Despite not being allowed to express an opinion that Tucker's act of physically modifying the tracheostomy tubes violated the standard of care, Beard's expert was allowed to state his opinion that doing so would, in general, violate the standard of care. Beard's expert testified that he had never "modified, post manufacturing a tracheostomy tube by cutting a hole in it." When asked if cutting a hole in a tracheostomy tube meets the standard of care, Beard's expert replied:

> I believe that it would be impossible with accuracy and precision to create a hole without the hole potentially causing tissue trauma. And also, it would be hard just to do a guess work or estimate basis to do this as these are highly precisely manufactured products, medical grade products, and I would not feel that I have the mechanical skills to carve in like the machine in which the manufacturer can fabricate it. They fabricate fenestrated tracheostomy tubes. You can order them.

**{¶16}** Beard's expert went on to say that Beard's throat anatomy was such that he required custom-ordered tubes. Finally, Beard's expert testified that Beard ultimately had to seek a second opinion after Tucker's attempts to modify the tracheostomy tubes failed. The physician offering the second opinion custom-ordered tracheostomy tubes that fit Beard without modification.

**{¶17}** The jury heard Beard's expert define the standard of care in a way that left no doubt that he believed Tucker's modifications to the tracheostomy tubes violated the standard of care. And in closing argument, Beard highlighted this testimony by referring to Tucker's act of modifying the tubes and saying, "you can look at those tubes and you can see, you can decide and you can compare them to the manufactured tube where there's the air hole that's in there, and that edge is smooth. It's not jagged. It's not cut." Tucker did not object to this argument nor did the court instruct the jury to disregard it. With Beard's expert allowed to express his opinion that it was a violation of the standard of care for Tucker to modify the tracheostomy tubes and Beard highlighting that testimony in closing argument, any error the court made by sustaining the objection to testimony by Beard's expert was rendered harmless.

## II. Directed Verdict

**{¶18}** Beard next argues that the court erred by failing to direct a verdict on the issue of informed consent in his favor at the close of evidence. He maintains that Tucker, who testified on cross-examination during Beard's case-in-chief, admitted that he

did not obtain written informed consent for the surgery and further admitted that he did not inform Beard of the risk that a tracheostomy could become permanent.

{¶19} When the court denies a motion for a directed verdict at the close of the plaintiff's case-in-chief, the disappointed party must renew the motion at the close of all the evidence in order to preserve it for appeal. *See Chem. Bank of New York v. Neman*, 52 Ohio St.3d 204, 207, 556 N.E.2d 490 (1990) (finding that a plaintiff "waived any claim of error in the denial of the directed verdict by failing to renew his motion at the close of all evidence"); *Helmick v. Republic-Franklin Ins. Co.*, 39 Ohio St.3d 71, 72, 529 N.E.2d 464 (1988), paragraph one of the syllabus ("When a motion for directed verdict is made by a defendant at the conclusion of the plaintiff's case and is overruled, the defendant's right to rely on the denial of that original motion as error is not waived when the defendant proceeds to present his evidence and defense as long as the motion is renewed at the conclusion of all the evidence.").

{¶20} There is nothing in the record to show that Beard renewed his motion for a directed verdict at the close of all the evidence. By failing to do so, he forfeited the right to raise as error on appeal the court's failure to direct a verdict in his favor. Even if Beard had not forfeited his right to raise this assigned error, it would nonetheless fail because the jury ultimately decided all factual issues against him.

{¶21} The court must direct a verdict if, after construing the evidence most strongly in favor of the party against whom the motion is directed, it "finds that upon any determinative issue reasonable minds could come to but one conclusion upon the

evidence submitted and that conclusion is adverse to such party[.]" Civ.R. 50. This standard is similar to the standard used for summary judgments under Civ.R. 56. *See Gracetech Inc. v. Perez*, 8th Dist. Cuyahoga No. 96913, 2012-Ohio-700, ¶ 9 (the standards applicable to motions for summary judgment and a directed verdict are the same).

**{¶22}** With summary judgments,

> [a]ny error by a trial court in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made.

*Continental Ins. Co. v. Whittington*, 71 Ohio St.3d 150, 155, 1994-Ohio-362, 642 N.E.2d 615, syllabus. So, too, with directed verdicts. *See Altercare of Mayfield Vill., Inc. v. Berner*, 8th Dist. Cuyahoga Nos. 104259 and 104306, 2017-Ohio-958, ¶ 37 (any error by the trial court in refusing to grant a directed verdict rendered harmless when jury's verdict corrected the error).

**{¶23}** The jury returned a verdict in favor of Tucker on all aspects of the case, including the lack of informed consent. By doing so, it demonstrated that there were genuine factual issues against Beard. The jury's verdict thus rendered harmless any error in the court's refusal to direct a verdict in Beard's favor at the close of his case-in-chief.

### III. Amendment of Answer

**{¶24}** Nearly 18 months after initially filing its answer, and after Beard filed a motion for summary judgment on the issue of informed consent, the court granted MetroHealth leave to amend its answer to assert as an affirmative defense the statutory

offsets for political subdivisions contained in R.C. 2744.05(B) and (C). Beard's sixth assignment of error maintains that it was error for the court to grant leave to amend the answer.

{¶25} As with our disposition of the fifth assignment of error, the jury verdict in favor of Tucker and MetroHealth moots Beard's argument that the court erred by allowing MetroHealth to amend its answer to assert the affirmative defense of political subdivision immunity. Beard concedes this point and raises this assignment solely for purposes of preserving the issue for further review. *See* appellant's reply brief at 8.[3]

{¶26} Judgment affirmed.

It is ordered that appellees recover of appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

[3] Even if we were to reach the merits of this argument, we would not find that the court abused its discretion under Civ.R. 15(A) by granting MetroHealth's motion for leave to amend its answer. The original answer did not specifically assert political subdivision immunity under R.C. 2744.05(B) and (C). Nevertheless, it did raise as affirmative defenses that some of the claims made by Beard were "subject to the limits on certain types of damages" and that MetroHealth was "entitled to a set off" for any amount paid to Beard by other persons or entities. This was sufficient to place Beard on notice that in the event he were to prevail on his complaint, MetroHealth would be seeking statutory offsets. And having been on notice that statutory offsets would be asserted, he can show no prejudice from amendment sufficient to show that the court acted arbitrarily by granting leave to amend. *Taylor v. Meridia Huron Hosp.*, 8th Dist. Cuyahoga No. 80121, 2002-Ohio-3449, ¶ 18.

_____
MELODY J. STEWART, JUDGE

EILEEN A. GALLAGHER, P.J., and
ANITA LASTER MAYS, J., CONCUR