OPINION
{¶ 1} Appellant Leonard Orwick is appealing a number of aspects contained in his divorce decree issued by the Jefferson County Court of Common Pleas. Appellant challenges, inter alia, the award of spousal support, the court's finding that Appellant committed financial misconduct, the division of marital property, the court's failure to reserve jurisdiction over spousal support, and the trial court's decision to allow Appellee to be restored to her former name. The trial court does appear to have erred in its calculation and distribution of the marital debt, and the divorce decree is hereby reversed and remanded for further proceedings to clarify or correct the division of marital property.
 {¶ 2} The parties were married in 1974. They had two children, who are now emancipated. After 28 years of marriage, Appellant filed for divorce on June 11, 2002.
 {¶ 3} On June 24, 2002, Appellee filed a motion for a temporary restraining order to prevent Appellant from disposing of marital assets. Appellee alleged that Appellant had recently disposed of a pontoon boat and a personal jet ski, and had depleted marital banking accounts. The motion was granted on July 15, 2002.
 {¶ 4} On July 10, 2002, Appellee filed a request for production of documents, asking for disclosure of the parties' financial records for the prior four and one-half years. Appellee filed a motion to compel discovery on August 26, 2002. The court sustained the motion on September 13, 2002, and ordered Appellant to provide the financial data within 30 days. Appellee filed another motion to compel discovery on February 28, 2003. Appellant filed his own motion to compel discovery on March 12, 2003. A hearing on the motions was held on March 24, 2003.
 {¶ 5} On March 26, 2003, the trial court ordered Sky Bank and GM MasterCard to turn over records to both parties, and ordered both parties to promptly respond to any outstanding interrogatories, requests for admissions, and requests for production of documents.
 {¶ 6} The final divorce hearing was held on June 12, 2003.
 {¶ 7} On March 5, 2004, the court filed its Finding of Facts.
 {¶ 8} On March 23, 2004, Appellee filed a motion to have her maiden name restored.
 {¶ 9} On April 7, 2004, the court filed its Final Decree of Divorce. Appellant was 53 and Appellee was 52 years old at the time the divorce was granted. The court awarded Appellee spousal support of $500 per month. The court divided the household goods, vehicles, and miscellaneous items almost evenly, except that Appellant was required to reimburse Appellee for one-half the value of a pontoon boat and a personal jet ski that he sold, and Appellee was required to reimburse Appellant for one-half the amount that she had withdrawn from a checking account.
 {¶ 10} On July 8, 2004, Appellant filed with this Court a motion for a stay of proceedings, which was in actuality a motion for stay of execution. Appellant had filed a similar motion with the trial court, which was denied on April 27, 2004.
 {¶ 11} On July 21, 2004, this Court granted Appellant's motion for a stay of execution of two aspects of the divorce decree: 1) the disposition of the marital home; and 2) the disposition of the Appellant's pension. The stay did not apply to any other aspect of the decree.
 First Assignment of Error {¶ 12} "THE TRIAL COURT ERRED BY THE COURT'S OWN ADMISSION THAT IT FAILED TO RESERVE JURISDICTION ON THE AWARD OF SPOUSAL SUPPORT"
 {¶ 13} R.C. § 3105.18(E)(1) provides for modification of the amount or terms of spousal support if the court determines that the circumstances of either party have changed and if the divorce decree contains a provision "specifically authorizing" such modification. The decision as to whether to include a provision retaining jurisdiction to modify spousal support is a matter within the trial court's discretion. Johnson v.Johnson (1993), 88 Ohio App.3d 329, 331, 623 N.E.2d 1294. An abuse of discretion is, "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Abuse of discretion signifies a, "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621, 614 N.E.2d 748.
 {¶ 14} Appellant argues that the trial court abused its discretion by attempting to force Appellant into giving up his right to appeal in order to have the trial court reserve jurisdiction to modify spousal support. The record does not support Appellant's allegation. First, there is nothing in the record, up to and including the time that the divorce decree was filed, that mentions in any way whether the trial court would reserve jurisdiction to modify spousal support. The evidence Appellant cites is from the transcript of the hearing on Appellant's motion for stay of execution of the divorce decree, held on April 26, 2004. Assuming arguendo that this transcript is even admissible on appeal of a judgment entry filed two weeks earlier, the trial judge stated the following:
 {¶ 15} "I am telling you I did leave out the retaining jurisdiction which should have been included. I can do a nunc pro tunc and correct that if that's all there is. If there's other issues I guess it won't help." (4/26/04 Tr., pp. 11-12.)
 {¶ 16} There is nothing in the trial judge's statement that can be construed as a threat to Appellant. Furthermore, Appellant does not appear to have filed a motion for the trial court to correct the divorce decree nunc pro tunc, as offered by the trial court.
 {¶ 17} Although Appellant did not raise any other arguments under this assignment of error, the wording of his assignment of error appears to imply that the trial court abused its discretion when it failed to include, sua sponte, the reservation of jurisdiction language in the divorce decree. We are mindful of a fairly large body of caselaw that allows for an abuse of discretion review when a trial court orders a relatively long period of spousal support and fails to expressly state, sua sponte, that it is reserving jurisdiction to modify the spousal support award. As stated in Berthelot v. Berthelot, 154 Ohio App.3d 101,2003-Ohio-4519, 796 N.E.2d 541:
 {¶ 18} "Where a trial court orders spousal support for definite periods of relatively long duration without a reservation of authority to modify the amount of support due to a change of circumstances, the trial court may be found to have abused its discretion." Id. at ¶ 55.
 {¶ 19} The reason this reservation of jurisdiction language is so important is because, under R.C. § 3105.18(E)(1), the trial court does not have jurisdiction to modify the spousal support award without a specific provision in the divorce decree authorizing the court to modify the award.
 {¶ 20} In Berthelot, the trial court was found to have abused its discretion when it failed to reserve jurisdiction to modify a five-year spousal support award, under the specific facts of the case. Id. at ¶ 57-58. See also Nori v. Nori (1989), 58 Ohio App.3d 69, 73,568 N.E.2d 730 (ten-year spousal award required reservation of jurisdiction to modify the award, under the facts of the case); Smith v.Smith (Jan. 12, 2001), 6th Dist. No. H-99-029 (seven year spousal support award required reservation of jurisdiction, under the circumstances of the case); Canales v. Canales (Mar. 17, 1989), 2nd Dist. No. 88 CA 52 (trial court should have included the reservation of jurisdiction language when it ordered four years of spousal support under circumstances in which the parties economic situation was likely to change significantly). In contrast, this Court held that a six-year award of spousal support was a relatively short period of time and did not require the trial court to reserve jurisdiction to modify the award, under the circumstances of the case. Herron v. Herron (Dec. 18, 1996), 7th Dist. No. 95-CO-65. The facts and circumstances of each case determine when a trial court abuses its discretion in failing to sua sponte add the reservation of jurisdiction language.
 {¶ 21} Appellant did not present us with any specific facts and circumstances why, in this specific case, the trial court should have sua sponte added the reservation of jurisdiction language to the divorce decree. Nevertheless, it appears that the trial court has already expressed a willingness to file a nunc pro tunc entry adding the reservation of jurisdiction language to the divorce decree. As later discussed, we must remand the matter to the trial court to correct or clarify certain matters relating to the division of marital assets. The trial court is certainly free to include in its judgment entry express language reserving jurisdiction to modify the spousal support award, if that is the trial court's intent. If the trial court does not feel a reservation of jurisdiction is warranted in this matter, the court is also free to make this clear on remand. It would appear premature at this time to determine whether the trial court abused its discretion in this matter when this issue is likely to become moot once the case is remanded.
 Second Assignment of Error {¶ 22} "THE COURT ERRED BY FINDING THAT THE APPELLANT COMMITTED FINANCIAL MISCONDUCT. NO EVIDENCE WAS PRESENTED TO SUPPORT THIS FINDING."
 {¶ 23} Appellant argues that the trial court penalized him in the division of marital debts and assets because the court found he had committed financial misconduct. Appellant does not dispute that R.C. §3105.171(E)(3) allows the court to adjust the division of marital property due to a party's financial misconduct:
 {¶ 24} "(E)(3) If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property."
 {¶ 25} Appellant contends, though, that "financial misconduct" in this context has a very specific meaning. Appellant is correct in his argument. "Financial misconduct" under R.C. § 3105.171(E)(3) means that, "the offending spouse will either profit from the misconduct or intentionally defeat the other spouse's distribution of marital assets."Hammond v. Brown (Sept. 14, 1995), 8th Dist. No. 67268. "Financial misconduct implies some type of wrongdoing in that the offending spouse will either profit from the misconduct or intentionally defeat the other spouse's distribution of marital assets." Wideman v. Wideman, 6th Dist. No. WD-02-030, 2003-Ohio-1858, ¶ 34. Thus, some element of wrongful intent or scienter is involved in establishing "financial misconduct" in this context. Mantle v. Sterry, 10th Dist. No. 02AP-286, 2003-Ohio-6058, ¶ 32.
 {¶ 26} We apply the abuse of discretion standard when reviewing a trial court's determination that a party committed financial misconduct under R.C. § 3105.171(E)(3). Kaster v. Kaster (Sept. 6, 1994), 7th Dist. No. 627.
 {¶ 27} The party alleging financial misconduct has the burden of proof to establish the elements of that misconduct. Hammond, supra.
 {¶ 28} The misconduct at issue must usually occur during the pendency of the divorce or immediately prior to filing for divorce in order to establish the party's intent or scienter. Rinehart v. Rinehart (May 18, 1998), 4th Dist. No. 96 CA 10. Appellee disputes this general rule of law, but Appellee's arguments are not persuasive. Appellee cites Detlefv. Detlef (Dec. 14, 2001), 6th Dist. No. L-00-1137, in support, but theDetlef analysis is exactly the same as in Hammond and Rinehart (which we have already cited and which Appellant relies upon), and Detlef actually cites those cases. Although the proximity of the alleged misconduct to the initiation of divorce proceedings is not the only means to establish wrongful intent or scienter, it is by far the most common means. Furthermore, if the time frame of the alleged misconduct does not establish scienter, there must be some other evidence that does establish it. Appellee seems to assume that the financial misconduct may occur at any time during the marriage, and that no independent proof of scienter is necessary for the trial court to invoke R.C. § 3105.171(E)(3) other than that the misconduct occurred during the marriage. This is not a correct interpretation of R.C. § 3105.171(E)(3). If Appellee believes that financial misconduct occurred long before divorce proceedings were initiated, Appellee also needed to prove that Appellant had a wrongful intent when the conduct occurred.
 {¶ 29} Appellant argues that his alleged misconduct took place years before the divorce complaint was filed, and merely consisted of sloppy bill paying and bad management of personal finances. Appellant contends that his financial problems did not have anything to do with the divorce, and that a person may not be punished during divorce proceedings merely because he or she was a poor money manager during the entire course of the marriage.
 {¶ 30} In support, Appellant cites Haslem v. Haslem (1999),133 Ohio App.3d 257, 727 N.E.2d 928. In Haslem, the husband had removed over $56,000 from his business, and then transferred it to a friend to purchase real estate in Serbia. He also tried to conceal almost $16,000 in income that was not listed in the company records. The Eighth District Court of Appeals agreed with the trial court that the husband's actions constituted financial misconduct under R.C. § 3105.171(E)(3). Appellant contends that his alleged misconduct does not compare in any way to the conduct that occurred in Haslem. Appellant is essentially correct thatHaslem presented an extreme example of financial misconduct. Nevertheless, there are many forms of financial misconduct, and whether or not a party committed such misconduct is largely dependent on the specific facts of the case.
 {¶ 31} In the instant case, the trial court found that Appellant had engaged in financial misconduct by selling a pontoon boat, a jet ski, and in incurring substantial credit card debt, primarily through cash advances. (4/7/04 Divorce Decree, pp. 5-6.) The court also found that Appellant had failed to adequately account for the cash advances and failed to demonstrate that the money was used to pay marital debt or to acquire marital assets. (4/7/04 Divorce Decree, p. 6.)
 {¶ 32} There is no dispute that Appellant did sell a pontoon boat and a jet ski at or near the time of the filing for divorce. (6/12/03 Tr., pp. 60, 171.) This fact may be used to establish Appellant's intent to deprive Appellee of marital assets. Therefore, the court was within its discretion to penalize Appellant for those actions.
 {¶ 33} The trial court's apportionment of the parties' debt, particularly the credit card debt, is much more problematic. It appears from Appellee's evidence at trial that the bulk of Appellant's disputed cash advances were withdrawn from a GM Master Card between October and December of 1999. (6/12/03 Tr., Defense Exh. R, credit card records.) During this time period, Appellant's cash advance balance on his GM card went from $0 to $3,298.14. Following these withdrawals, Appellant failed to make credit card payments on time and incurred numerous late fees and penalties. The court ultimately apportioned the entire GM Master Card debt to Appellant, in the amount of $4,326.04.
 {¶ 34} Appellant filed for divorce on June 11, 2002. The time gap between the cash advances and the beginning of the divorce proceedings was two and one half years. This is a significant gap in time. Without some other evidence or clear inference from the record, the mere timing of Appellant's withdrawals, which occurred long before the divorce complaint was filed, does not indicate a wrongful intent to injure Appellee or deplete her share of marital assets.
 {¶ 35} Although Appellant could not clearly explain what happened to this money, it does not appear from the record that evidence was introduced to support a contention Appellant has the money deposited or hidden anywhere, which might have buttressed an inference of wrongful intent. Appellee points to no other specific evidence to support the conclusion that Appellant withdrew those cash advances with the intent to deprive Appellee of marital assets. Appellee relies on the general conclusion that Appellant deprived Appellee of assets during the entire marriage, including taking money from a line of credit, making withdrawals from the marital checking account, concealing assets such as bonus checks he received, transferring assets to accounts that were unknown to Appellee, and failing to have plausible explanations as to what happened to most of this money. Appellee does not cite to any specific part of the record that demonstrates any of these allegations.
 {¶ 36} Even worse for Appellee's argument, the trial court appears to have only relied upon the cash advances taken from the credit card to support its unequal division of marital debts. The court imposed $28,535.34 of debt on Appellant, and $4,677.14 on Appellee. This is a difference of $23,858.20. Appellant's portion of marital debt included U.S. Department of Education accounts, all of the Sky Bank line of credit, and all the debt from a Sky Bank Visa card. Even if we assume that the trial court was correct in imposing the entire GM Master Card debt on Appellant, it is not at all clear from the trial court's judgment entries why so much other debt was attributed to Appellant.
 {¶ 37} It should be noted that the division of marital assets and debts should be equal, unless the trial court has equitable reasons for making an unequal division. R.C. § 3105.171(C)(1). If the division is materially unequal, the court must provide some explanation in the record that would enable a reviewing court to ascertain the basis for the unequal division of marital property. Kaechele v. Kaechele (1988),35 Ohio St.3d 93, 518 N.E.2d 1197, paragraph two of the syllabus.
 {¶ 38} The total marital debt in this case, according to the trial court's calculations, was $33,212.48. An equal division would have been $16,606.24. The discrepancy between an equal division and what the court actually imposed on Appellant was approximately $12,000. According to the trial court's explanation of Appellant's financial misconduct, the difference between Appellant's and Appellee's share of the debt should have been $4,326.04, which is the value of the GM Master Card debt. There simply is not enough information in the trial court's judgment entries, nor in Appellee's analysis, to fully explain the $12,000 discrepancy. If the discrepancy is completely dependent on Appellant's financial misconduct in using the GM Master Card, then the trial court's division of marital debt was in error.
 {¶ 39} Based on the lack of evidence of Appellant's wrongful intent, and the inexplicable division of the total amount of marital debt, this aspect of the trial court's judgment must be reversed and the case remanded for a redivision of the marital debt as listed on pages 5-7 of the divorce decree.
 Third Assignment of Error {¶ 40} "THE COURT ERRED IN AWARDING THE APPELLEE SPOUSAL SUPPORT AND DID SO ONLY AS A PUNATIVE [sic] MEASURE."
 {¶ 41} It is not at all clear what error Appellant is asserting here. Appellant makes no attempt to actually show that the trial court awarded spousal support to punish Appellant. In his argument, Appellant merely alleges that the trial court failed to consider all the factors listed in R.C. § 3105.18(C)(1). Appellant does not point to any specific factor that was ignored. Appellant may be implying that the trial court only looked at the factor in R.C. § 3105.18(C)(1)(a): "[t]he income of the parties, from all sources * * *."
 {¶ 42} Spousal support decisions are reviewed only for an abuse of discretion. Corradi v. Corradi, 7th Dist. No. 01-CA-22, 2002-Ohio-3011, ¶ 51. In the trial court's finding of facts and conclusions of law it noted the following factors in awarding spousal support: the ages of the parties; the length of the marriage; their employment status and current income; their earning abilities; their physical ailments; the fact that neither party was likely to obtain further education; their relative standards of living; and their anticipated living expenses. Therefore, it is obvious that the trial court considered more than the parties' income when it awarded spousal support. Appellant has not shown any abuse of discretion, and this assignment of error is overruled.
 Fourth Assignment of Error {¶ 43} "THE COURT ERRED BY CONDUCTING AN EX-PARTE HEARING AND ISSUING AN EX-PARTE ORDER UPON THE MOTION OF THE DEFENDANT/APPELLEE"
 {¶ 44} The last page of the divorce decree states that, "[t]he Defendant shall be restored to and hereafter known by her former name ofIole DiGiorgio." Appellee filed a motion on March 23, 2004, requesting that her name be restored. There is no indication in the record of an ex parte hearing on this matter, as alleged by Appellant.
 {¶ 45} R.C. § 3105.16 states: "When a divorce is granted the court of common pleas shall, if the person so desires, restore any name that the person had before the marriage."
 {¶ 46} This Court has held:
 {¶ 47} "It is obvious * * * that the legislature, in adopting R.C.3105.16, mandates that a court coming on to grant a final divorce must react to the desire of a person requesting restoration of her name that she had previous to the marriage." Hunt v. Hunt (Apr. 8, 1988), 7th Dist. No. 87-B-46.
 {¶ 48} In Hunt we held that it is reversible error for a trial court to refuse a person's request to be restored to her former name. Id. R.C. § 3105.16 does not contain any provision for a hearing or for the former spouse to oppose the motion. It simply allows for one party to make the request, and contains a mandate that the court grant the request. Therefore, the trial court appears to have adhered to the statute in allowing Appellee to be restored to her former name.
 {¶ 49} Appellant has not made it clear how he was or could have been prejudiced by the trial court's decision, and it does not appear that the trial court actually held an ex parte hearing as alleged by Appellant. For these reasons, this assignment of error is overruled.
 Fifth Assignment of Error {¶ 50} "THE COURT ERRED BY ALLOWING THE DEFENDANT/APPELLEE TO PRESENT EVIDENCE REGARDING SPOUSAL SUPPORT WHEN SHE REFUSED TO COMPLY WITH THE COURT'S ORDER TO ANSWER INTERROGATORIES REGARDING THE SAME"
 {¶ 51} Appellant appears to assert two arguments in this assignment of error. First, Appellant seems to be requesting this Court to impose some type of Civ.R. 37 sanctions against Appellee due to alleged violations of discovery orders. Second, Appellant alleges some type of reversible error due to an evidentiary decision by the trial court. We will deal with these two issues in turn.
 {¶ 52} First, this Court has no power to impose sanctions under Civ.R. 37. The Rules of Civil Procedure do not apply to the judicial procedure used on appeal. Civ.R. 1(C). The Rules of Appellate Procedure apply to this appeal, and there is no counterpart to Civ.R. 37 in the Rules of Appellate Procedure. Civ.R. 37 is directed to the trial court. If Appellant actually believed that numerous discovery violations had occurred, it was up to Appellant to deal with this issue at the proper time in the trial court proceedings.
 {¶ 53} Second, a trial court has vast discretion in the admission and control of evidence used at trial: "It is axiomatic that the admission or exclusion of evidence is generally within the sound discretion of the trial court and a reviewing court may reverse only upon the showing of an abuse of that discretion." Anderson v. Anderson, 147 Ohio App.3d 513,2002-Ohio-1156, 771 N.E.2d 303, ¶ 92.
 {¶ 54} Appellant objects to the testimony of Maureen DiLoreti, a former co-worker of Appellee. The trial court noted, upon Appellant's objection, that this witness had only been revealed one day before trial. (6/12/03 Tr., p. 220.) Ms. DiLoreti testified that Appellant would sometimes arrive at Appellee's place of employment and pick up her paycheck. (6/12/03 Tr., p. 2220f.) Appellant does not explain how this testimony affected the trial court's judgment or prejudiced him in any way. As stated in Civ.R. 61:
 {¶ 55} "No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."
 {¶ 56} Issues to consider in determining whether a party was prejudiced by the late disclosure of witnesses include: 1) whether the opposing party had access to the witnesses or their potential testimony prior to trial; 2) whether the opposing party had a full opportunity to cross-examine the witnesses; 3) whether the testimony was relevant or critical to any issues at trial; 4) whether the testimony was repetitive of other evidence already admitted at trial; and 5) whether the opposing party needed or requested a continuance in order to prepare for the witnesses' testimony. Anderson v. Lorain Cty. Title Co. (1993),88 Ohio App.3d 367, 376, 623 N.E.2d 1318; Nickey v. Brown (1982),7 Ohio App.3d 32, 34, 454 N.E.2d 177.
 {¶ 57} During trial, Appellant requested that all testimony of Cynthia Stewart and Lois Hope, who were employees of Sky Bank, and of Maureen DiLoreti, be stricken from the record, as well as all evidence regarding spousal support. (6/13/03 Tr., pp. 291-292.) The trial court declined to take this drastic step.
 {¶ 58} "The exclusion of reliable and probative evidence is a severe sanction and should be invoked only when clearly necessary to enforce willful noncompliance or to prevent unfair surprise." Id.
 {¶ 59} Appellant did not request a continuance or give any reason to the trial court why the late disclosure of the witnesses could not be remedied by adequate cross-examination. Furthermore, Ms. Stewart largely repeated information that was already contained in other documentary evidence in the case. As far as Ms. Hope's testimony is concerned, Appellant's counsel stated at trial that the testimony was largely repetitive of Appellant's own testimony. (6/12/03 Tr., p. 228.) The trial court concluded that the issue of spousal support had been raised from the very beginning of the divorce proceedings, and that Appellant did not show how he was surprised by any of the testimony of the three witnesses. (6/13/03 Tr., p. 292.) Appellant has not demonstrated on appeal how the trial court's reasoning or actions could constitute reversible error, and this assignment of error is overruled.
 Sixth Assignment of Error {¶ 60} "THE DEFENDANT/APPELLEE DID NOT REQUEST DESIGNATION AS SURVIVING SPOUSE OR TO BE AWARDED A SEPARATE INTEREST IN THE APPELLANT'S PENSION AND SHOULD NOT BE PERMITTED TO LITIGATE THE ISSUE POST-DECREE"
 {¶ 61} Appellant is apparently asking for some type of injunction from this Court to prevent the trial court from ruling on post-decree motions submitted by Appellee concerning the disposition of Appellant's pension. Appellant does not point to any order or judgment from the trial court that he is appealing, and in fact, only cites portions of a transcript from a hearing held after this appeal was filed. This matter is not ripe for review, as there is no final order or judgment that this Court is being asked to review. Section 3(B)(2), Article IV of the Ohio Constitution establishes that the courts of appeal only have appellate jurisdiction to, "reverse judgments or final orders of the courts of record inferior to the court of appeals within the district * * *." Because there is no judgment or final order being challenged in this assignment of error, this Court has no jurisdiction to review the issue raised by Appellant. This assignment of error is overruled.
 Conclusions {¶ 62} Assignment of error number two is found to have merit in the appeal. It is unclear from the record why the trial court attributed such a large portion of marital debt to Appellant. Furthermore, there is insufficient evidence of financial misconduct, particularly with respect to cash withdrawals that Appellant made from a GM Master Card. These cash withdrawals were the stated reason for penalizing Appellant. The divorce decree is hereby reversed and remanded only for a correction or clarification of the trial court's apportionment of the marital debt, and in so doing, a correction or clarification of the overall division of marital property. All other aspects of the divorce decree are affirmed. A stay was issued by this Court with respect to the disposition of the marital home and Appellant's pension, and this stay is hereby lifted with the issuance of our Opinion.
Donofrio, P.J., concurs.
DeGenaro, J., concurs in part and dissents in part; see concurring in part and dissenting in part opinion.