OPINION
{¶ 1} Appellant, Elaine Lepowsky, was married to Appellee, Charles Lepowsky, for 36 years. Elaine filed for divorce from her husband in September of 2002, in the Columbiana County Court of Common Pleas. Charles counterclaimed for divorce. A trial was held on March 4, 2004, and the trial court granted the divorce based on Charles' infidelity. This is the second time this case has come to us on appeal. Elaine initially appealed alleging errors in the trial court's division of marital property and in its spousal support award. We upheld the trial court's division of marital property and reversed and remanded its spousal support decision.
 {¶ 2} In our prior opinion we found, Judge DeGenaro writing, that, "the trial court failed to indicate the basis for its [spousal support] award in sufficient detail," to enable us to determine if the award was fair and equitable and in accordance with the law. Lepowsky v.Lepowsky, 7th Dist. No. 04 CO 42, 2006-Ohio-667, at ¶ 3.
 {¶ 3} Following reversal and remand, the trial court did not deviate from its original award of spousal support. It did attempt to further explain the basis for its decision. (April 27, 2006, Judgment Entry.) Nonetheless, Elaine again timely appeals the trial court's spousal support award. She claims that the award constituted an abuse of discretion given the length of the parties' marriage, the fact that she was a homemaker spouse, and the significant disparity in social security benefits and income ability. She also takes issue with the trial court's failure to retain jurisdiction over the award.
 {¶ 4} For the following reasons, we hold that the trial court's limited additional explanation on remand fails to support a conclusion that the award was reasonable *Page 2 
and appropriate in light of the facts in this case. The parties to this long-term marriage had a vast disparity in income ability and expected Social Security benefits. Accordingly, we reverse and remand this case with the instruction that the trial court increase the amount and the duration of the spousal support award to enable Elaine to maintain a standard of living compatible with that attained during the parties' long marriage, and to maintain jurisdiction of this matter.
 {¶ 5} Appellant's first two assignments of error are addressed collectively here:
 {¶ 6} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN AWARDING APPELLANT/WIFE MINIMAL SPOUSAL SUPPORT IN A MARRIAGE OF LONG DURATION, WHERE APPELLANT WAS A HOMEMAKER SPOUSE WITH LIMITED EARNING ABILITY, WHERE THERE WAS A GROSS DISPARITY IN INCOME AND WHEN OTHER STATUTORY CRITERIA ARE MET.
 {¶ 7} "THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING SPOUSAL SUPPORT FOR LESS THAN SEVEN YEARS ON A THIRTY SIX YEAR MARRIAGE."
 {¶ 8} A trial court has broad discretion in determining spousal support, and a support award should not be disturbed without finding that an abuse of discretion has occurred. Wolfe v. Wolfe (1976),46 Ohio St.2d 399, 350 N.E.2d 413. Thus, a spousal support decision should be upheld unless the trial court's attitude is arbitrary, unconscionable, or unreasonable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140. Further, "[w]hen applying the abuse of discretion *Page 3 
standard, a reviewing court is not free to merely substitute its judgment for that of the trial court." In re Jane Doe 1 (1990),57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181.
 {¶ 9} Upon request by either party, a trial court may award spousal support. R.C. 3105.18(B). When considering an award of spousal support, a court should consider all of the R.C. 3105.18(C) factors, and award an amount that is appropriate and reasonable under the circumstances.Schultz v. Schultz (1996), 110 Ohio App.3d 715, 724, 675 N.E.2d 55;Bowen v. Bowen (1999), 132 Ohio App.3d 616, 626, 725 N.E.2d 1165. "While the concept of need is necessarily encompassed in an inquiry upon appropriateness and reasonableness, it is no longer the sole consideration." Olenik v. Olenik (Sept. 18, 1998), 7th Dist. No. 94 CA 139, 3.
 {¶ 10} R.C. 3105.18 provides in pertinent part,
 {¶ 11} "(A) * * * `Spousal support' does not include any payment made to a spouse or former spouse, or to a third party for the benefit of a spouse or former spouse, that is made as part of a division or distribution of property or a distributive award under section 3105.171
of the Revised Code.
 {¶ 12} "(B) In divorce and legal separation proceedings, upon the request of either party and after the court determines the division or disbursement of property under section 3105.171 of the Revised Code, the court of common pleas may award reasonable spousal support to either party. During the pendency of any divorce, or legal separation proceeding, the court may award reasonable temporary spousal support to either party. *Page 4 
 {¶ 13} "An award of spousal support may be allowed in real or personal property, or both, or by decreeing a sum of money, payable either in gross or by installments, from future income or otherwise, as the court considers equitable.
 {¶ 14} "* * *
 {¶ 15} "(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 {¶ 16} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
 {¶ 17} "(b) The relative earning abilities of the parties;
 {¶ 18} "(c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 19} "(d) The retirement benefits of the parties;
 {¶ 20} "(e) The duration of the marriage;
 {¶ 21} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 22} "(g) The standard of living of the parties established during the marriage;
 {¶ 23} "(h) The relative extent of education of the parties; *Page 5 
 {¶ 24} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 25} "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 {¶ 26} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 {¶ 27} "(l) The tax consequences, for each party, of an award of spousal support;
 {¶ 28} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 29} "(n) Any other factor that the court expressly finds to be relevant and equitable.
 {¶ 30} "(2) In determining whether spousal support is reasonable and in determining the amount and terms of payment of spousal support, each party shall be considered to have contributed equally to the production of marital income."
 {¶ 31} The evidence in the record reflects that Elaine and Charles were married for 36 years. Both have a high school education and little post high school education. Elaine became pregnant and left college after two quarters. Charles is a trade school graduate. Elaine became a homemaker spouse and raised the parties' *Page 6 
four children, who were emancipated at the time of the divorce. At one time Elaine obtained her cosmetology license, but it has since lapsed. She also babysat for her grandson for two years. At the time of the divorce she was earning about $5,000 per year cleaning houses.
 {¶ 32} Throughout the parties' marriage, Charles was a pipefitter for General Motors. He was projected to earn $101,000 in 2004 at the time of the divorce.
 {¶ 33} The parties reached a partial settlement agreement prior to trial and agreed to equally split Charles' pensions and the equity in the marital home. They also agreed to a division of their personal property and that each should keep their respective vehicles.
 {¶ 34} At the time of trial, Elaine was receiving temporary spousal support in the amount of $225 per week while living in the marital home. Charles was paying all of the household expenses, insurance premiums, utilities, taxes, and her car payment at the time. (Tr., pp. 93-94.)
 {¶ 35} Elaine proposed two spousal support options to the trial court. First, she sought an initial $20,000 lump sum spousal support award in addition to monthly payments in the amount of $2,000 for the next forty-eight months. In the alternative, she asked for an upfront payment of $10,000 and indefinite monthly payments in the amount of $3,000. She sought an initial lump sum payment to enable her to purchase a home. (Tr., pp. 78-80.)
 {¶ 36} Charles proposed to pay Elaine spousal support in the amount of $615.20 per month for a period of seven years and four months, in addition to his *Page 7 
payment of her health insurance premiums for 24 months. Based on his monthly expenses, he claimed that $600 was his approximate monthly disposable income. (Tr., pp. 172, 224.)
 {¶ 37} Following trial, the trial court awarded Elaine support in the amount of $1,020 per month for eighty-two months after imputing certain income to her. The court stated in its original entry that spousal support was reasonable and necessary based on the length of the marriage, the disparity in the parties' income, and Elaine's lack of marketable skills. (July 14, 2004, Judgment Entry.)
 {¶ 38} On appeal, we concluded that the trial court's award of $1,020 per month in addition to Elaine's imputed income as a medical transcriptionist at $10 per hour, forty hours a week, would give her an annual income of approximately $33,040.00; whereas after payment of spousal support, Appellee would still earn about $88,760.00 per year. Id. at ¶ 53. We opined that,
 {¶ 39} "This is a fairly large discrepancy, especially considering the length of the marriage and the disparity in future social security benefits. This discrepancy would be large even if the trial court haddoubled the spousal support award. In that case, Elaine would have about $45,280.00 per year, while Charles would retain about $76,520.00. Nothing in the judgment entry indicates why the trial court found that the amount it awarded was appropriate and reasonable." (Emphasis added.) Id. at ¶ 53.
 {¶ 40} The court's decision also did not reflect why the award was reasonable and appropriate given Elaine's submitted monthly expenses of $3,439.00 and *Page 8 
Charles' monthly expenses of $4,085.95. We noted in our prior decision, "the trial court did not discuss whether any of the expenses claimed * * * were actually reasonable." Id. at ¶ 54.
 {¶ 41} On remand, the trial court did not conduct a new hearing and did not deviate from its prior award. Instead, the court attempted to further explain its decision, stating that it considered the R.C.3105.18(C) factors. It explained that it calculated the length of the spousal support award at 82 months because both parties would be reaching retirement at about that time. The court also said that in addition to the spousal support payments, Charles was responsible for Elaine's health insurance premiums of $415.22 per month for 24 months under COBRA. The trial court again declared that Elaine's medical transcriptionist training would, "boost her earning power to $8.00 — $10.00 per hour[,]" and with a job at that wage plus the other spousal support benefits, she, "could enjoy a good standard of living during her remaining working years until retirement[.]" The trial court stated that it did not challenge the parties' claimed monthly expenses. (April 27, 2006, Judgment Entry.)
 {¶ 42} Upon reviewing the trial court's decision on this issue along with the trial transcript and our prior decision, we must conclude that the spousal support award is not reasonable and appropriate in view of the facts in this case.
 {¶ 43} As the trial court's most recent decision points out, a spousal support award does not need to equalize the parties' incomes. "[E]qualization of income is not a factor that must be considered or a goal in divorce cases." Bachtel v. Bachtel, 7th Dist. No. 03 MA 75,2004-Ohio-2807, at ¶ 41. However, the award must *Page 9 
nonetheless be equitable in light of the factors in each case.Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, 96, 518 N.E.2d 1197. "To be equitable, the parties should, if feasible, enjoy a standard of living comparable to that enjoyed during the marriage, adjusted by the factors set forth in R.C. 3105.18." Gallo v. Gallo, 11th Dist. No. 2000-L-208, 2002-Ohio-2815, at ¶ 40; Buckles v. Buckles (1988),46 Ohio App.3d 102, 110, 546 N.E.2d 950.
 {¶ 44} A review of the factors in this case reflects that most, if not all, favor Appellant. Thus, it is instructive to look at other comparable cases containing a comparable fact pattern.
 {¶ 45} In Glick v. Glick (1999), 133 Ohio App.3d 821, 729 N.E.2d 1244, the husband challenged the common pleas court's spousal support award. He was 48 years old and earned more than $180,000 per year at the time of divorce. His wife's primary job had been to raise the family and she had not worked outside of the home since 1979. She was 46 years old at the time of the divorce and had no income. The parties were married for 22 years. The trial court awarded wife $3,570 per month in indefinite spousal support and $65,000 in attorney fees as additional spousal support. She was also awarded the parties' marital home and its furnishings.
 {¶ 46} On appeal, the husband took issue with the amount of the award. The court of appeals upheld the award as within the trial court's discretion, quoting Clark v. Joseph (1994), 95 Ohio App.3d 207, 214,642 N.E.2d 36:
 {¶ 47} "`It is reasonable for the spouse whose individual income-producing ability has been enhanced through the contributions of both spouses to assist the *Page 10 
other spouse for a period following the divorce to enable that spouse to become self-supporting outside the marriage. If, because of the duration of the marriage, the age of the parties, and the roles played during the marriage, one spouse does not have the resources, ability, or potential to become self-supporting outside the marriage, it is reasonable that the other spouse provides support indefinitely.'" Id. at 830.
 {¶ 48} In Waller v. Waller, 163 Ohio App.3d 303, 2005-Ohio-4891,837 N.E.2d 843, the parties were married for 29 years. The husband was a self-employed chiropractor and the wife worked as his office manager, taking a very low salary to maximize his social security contributions. The husband was 64 and the wife was 51 years old at the time of the divorce. Id. at ¶ 2-3.
 {¶ 49} Husband was ordered to pay wife $1,200 in spousal support per month for five months, and then $1,500 per month thereafter for ten years. The court reserved jurisdiction to modify spousal support. Id. at 80. At the time of divorce, wife had monthly expenses of $2,844 and a monthly income of $1,109. Husband earned $3,800 per month and had $2,577 monthly expenses. Id. at ¶ 61.
 {¶ 50} In analyzing the facts in Waller, we stressed that it is necessary to review the facts in each case as they relate to the factors and to consider what is reasonable. Id. at ¶ 63, 64. We upheld the trial court's award as fair and reasonable in light of the long marriage, the age of the parties, and the sacrifices that the wife made for her husband's business. Id. at ¶ 83.
 {¶ 51} In Schieve v. Schieve, 9th Dist. No. 05CA0037-M,2005-Ohio-5190, the court of appeals upheld an indefinite spousal support award as reasonable and *Page 11 
appropriate. The parties had been married for 39 years. The husband was 60 and the wife was 58 years old at the time of the divorce. Both parties had some health problems. The husband earned $66,950 per year and the wife earned $27,252 at the time of the divorce. The trial court awarded the wife $2,650 per month indefinite spousal support and retained jurisdiction over the award. Id. at ¶ 9-11.
 {¶ 52} In upholding the award, the court of appeals quoted the trial court's analysis in part, "[a]fter more than thirty-nine years of marriage, the wife is entitled to maintain the same standard of living as the husband, even if it means that both parties may experience a reduction in their standards of living in order to support two households." Id. at ¶ 11.
 {¶ 53} In Kennard v. Kennard, 5th Dist. No. 02CA-F-11-059, 2003-Ohio-2800, the court of appeals upheld the trial court's award of spousal support to the wife in the amount of $1667.67 per month for the first year, $1,000 the second year, and $1,200 per month thereafter for seven years. The wife was 40 and the husband was 42 years old at the time of divorce. They had been married for 20 years. The wife was unemployed as she had been a homemaker spouse. The husband earned approximately $62,000 per year. Id. at ¶ 34.
 {¶ 54} The husband argued on appeal that the spousal support award was inequitable in light of his role in the parties' agreed shared parenting plan of their children, which would require him to maintain an apartment for himself and the two children. Id. at ¶ 35. However, the court on appeal found no abuse of discretion. *Page 12 
 {¶ 55} The parties in Carney v. Carney (Sept. 22, 2000), 6th Dist. No. E-99-016, were married for 35 years and were 59 and 60 years old at the time of the divorce. The wife was awarded indefinite spousal support in the amount of $1,250 per month and the trial court retained jurisdiction. The husband argued on appeal that the award was an abuse of discretion since it would increase the wife's standard of living; she did not need the amount awarded; and the court failed to consider his ability to pay.
 {¶ 56} Nonetheless, the court of appeals upheld the award explaining that the trial court appropriately considered the length of the parties' marriage, their incomes, health, retirement benefits, and the standard of living established during their marriage. Id. at 4. The husband earned on average $64,000 per year. The wife's income was not provided. Although both parties worked during the marriage, his monthly retirement benefits were projected at $2,413 and hers were $404 per month. Id. at 2. Thus, both the amount and the indefinite duration of support were reasonable and appropriate based on their ages and the long-term duration of the marriage.
 {¶ 57} In Addington v. Addington, 4th Dist. No. 04CA2951,2004-Ohio-6931, the $2,500 per month indefinite spousal support award was upheld as reasonable and appropriate in light of the parties' 25-year marriage and their high standard of living during marriage. Initially, both were pharmacists. However, the wife subsequently supported the family while the husband attended medical school. She took care of the family in lieu of career advancements. At the time of divorce the wife *Page 13 
worked 32 hours per week and earned $69,000 as a pharmacist, and the husband earned $250,000 as a physician.
 {¶ 58} Turning to the matter at hand, a review of the R.C.3105.18(C)(1) factors in conjunction with the facts reveals the following:
 {¶ 59} (a) The parties' incomes. As noted previously, the trial court's decision leaves Elaine with an annual income of $33,040 at best, and Charles with $88,760 per year. Lepowsky at ¶ 53. However, the trial court's assumptions as to Elaine's income are much too speculative and do not appear to be supported in the record. The court assumes that Elaine will actually complete medical transcriptionist training and be able to obtain a job in this field. It also assumes she will earn $10 an hour for forty hours per week. Even if these assumptions are true, she will have a monthly income of approximately $1,600 before taxes in addition to her $1,020 monthly spousal support, for a total monthly income of about $2,620. Thus, even if we assume she completes her training and assuming secures a full time job, this factor favors an increase in spousal support award in light of her monthly expenses which total $3,439.00.
 {¶ 60} (b) The parties' earning abilities. Elaine earned less than $5,000 per year cleaning houses at the time of trial. She was physically unable to clean any more homes. (Tr., pp. 84-85.) Again, the trial court assumed Elaine might earn $10.00 an hour if and when she completes her job training, which combined with the $1,020 spousal support would provide her with about $33,040 annually before taxes. *Page 14 
The record reflects that Charles will continue to earn $87,760 per year. Accordingly, this factor supports an increase in spousal support.
 {¶ 61} (c) The ages and the physical, mental, and emotional conditionsof the parties. Elaine was 55 and Charles was 54 at the time of the trial. Thus, the trial court noted that they should both reach retirement age at nearly the same time. The record also reveals that both parties suffered from some minor health problems, but neither of their health issues would prevent them from working full time.
 {¶ 62} (d) The parties' retirement benefits. The parties agreed to share Charles' retirement accounts equally. Charles had one pension worth $32,794.14 at the time of the divorce, and his General Motors employee pension was valued at $56,351.98 at the time of the divorce. In addition, Elaine has an annuity that was valued at $487.69 at the time of trial. (Tr., p. 69.)
 {¶ 63} However, there is a great disparity in the parties' social security accounts. At the time of trial, Elaine's account had a value of $15,088.00 and Charles' account was valued at $205,924.00. The trial court even concluded in its original decision that there was a, "significant disparity in their respective social security accounts." (July 14, 2004, Judgment Entry, p. 9.)
 {¶ 64} On remand, the trial court indicated that the 82-month spousal support award was designed as a "safety-net" to take Elaine to retirement. However, the trial court failed to acknowledge that this award would only take her to her 62nd birthday, and that her acceptance of Social Security benefits at this age would force her to *Page 15 
take a permanently reduced rate of benefits. Accordingly, this factor supports an increase in the length of her award.
 {¶ 65} (e) The duration of the marriage. This was a very lengthy marriage, 36 years, which definitely supports a longer, and probably an indefinite, spousal support award. Kunkle v. Kunkle (1990),51 Ohio St.3d 64, 554 N.E.2d 83, paragraph one of the syllabus.
 {¶ 66} (f) This factor is inapplicable to this case.
 {¶ 67} (g) The standard of living of the parties established duringthe marriage. Both parties were accustomed to a good standard of living during their marriage. Elaine testified that the couple had a nice home, nice clothing, and that they enjoyed going out to dinner several times a week. They usually bought new cars, and they also enjoyed purchasing antiques. She also explained that Charles would take three to five annual vacations on his own every year. He often went on ski and golf trips. She would stay home with the children during his trips. (Tr., pp. 88-91.)
 {¶ 68} Each party presented their alleged reasonable living expenses at trial. Charles testified that he needed $4,085.95 for his monthly living expenses. In order to maintain a comparable standard of living, Elaine indicated she needed $3,489 a month even if Charles paid her health insurance. Under COBRA, he was only obligated to pay this expense for 24 months. The trial court did not question the reasonableness of either party's claimed expenses. In spite of this, the trial court still only awarded Elaine $1,020 per month for eighty-two months. *Page 16 
 {¶ 69} As indicated in our first decision, a trial court's award must be fair and equitable in light of the statutory factors and the facts in each case. The trial court fails to identify why Elaine should not be allowed to maintain a comparable standard of living to that which she enjoyed during the parties' marriage. The standard of living factor certainly supports an increase in the amount of spousal support.
 {¶ 70} (h) The relative extent of education of the parties. Again, both parties graduated from high school. Appellant completed about two quarters of college, and Charles is a trade school graduate.
 {¶ 71} (i) The relative assets and liabilities of the parties,including but not limited to any court-ordered payments by theparties. The parties agreed to split the marital assets equally. Charles was to pay Elaine $45,000, which represented half of the equity in the marital home while Charles was retaining the house. In addition, Elaine had a certificate of deposit valued at approximately $14,000. She was also awarded $36,800.00 from the parties' certificate of deposit account. She sought this money plus additional cash in order to buy a home. Based on her current annual income of less than $5,000 per year, she felt that she would be unable to secure a mortgage. (Tr., p. 78.)
 {¶ 72} Elaine also testified that she owed $8,013 on her vehicle, which was valued at $7,595. Thus, it had a negative equity of $418. She also owed $1,889 for her 2003 taxes, $138.09 to Sears, about $3,750 in attorney fees, and about $400 in moving expenses. These costs are in addition to her need to purchase a new home. She estimated that the associated expenses for real estate purchase costs, utility *Page 17 
deposits, property insurance, appraisals, and inspections would be approximately $3,000 without bank financing and $5,000 with bank financing. (Tr., pp. 71-72, Plaintiffs Exh. 23.)
 {¶ 73} Charles was awarded his watch collection, valued at about $500, and his General Motors personal savings plan valued at $17,000. He was also made responsible for penalty and lost interest in the amount of $13,003.52, and lost equity in the sale of a vehicle in the amount of $6,500. He had personal debt, not considered as marital property, in the amount of approximately $19,877 at the time of the divorce. Charles was keeping the parties' marital home. (July 14, 2004, Judgment Entry, p. 7.)
 {¶ 74} As we found in our prior decision, "[w]hen the various marital assets and debts are divided between the parties, the total amount of the marital property awarded to Charles was $126,576.58 and the total amount awarded to Elaine was $126,443.06[.] * * * If the lost value of the assets charged to Charles is taken out of the equation, then he was only awarded $107,073.06." Id. at ¶ 24. Thus, the division of marital property was essentially equal.
 {¶ 75} (j) The contribution of each party to the education, training,or earning ability of the other party, including, but not limited to,any party's contribution to the acquisition of a professional degree ofthe other party. In assessing this factor the trial court concluded in its first decision that the fact that Elaine stayed home with the parties' children, "was a major factor in the Husband being able to make certain *Page 18 
career advancements." (July 14, 2004, Judgment Entry, p. 10.) Thus, this factor supports an increase in the amount and duration of spousal support.
 {¶ 76} (k) The time and expense necessary for the spouse who isseeking spousal support to acquire education, training, or jobexperience so that the spouse will be qualified to obtain appropriateemployment, provided the education, training, or job experience, andemployment is, in fact, sought. At best, Elaine will be employable as a medical transcriptionist following her 31 weeks of training. However, there was uncertainty as to whether the courses were actually going to be available consecutively. At the time of trial, Elaine was almost finished with the first seven-week course. Thus, assuming she successfully completed the courses and was found to be productive and employable, she may have been working as a full-time medical transcriptionist about seven months after trial. (Tr., pp. 82-84.)
 {¶ 77} Again, though, the foregoing is purely speculative and assumes that she will be able to complete the necessary training and that she will actually secure a job at this rate. The trial court failed to consider Elaine's actual employment status at the time of trial, earning less than $5,000 per year.
 {¶ 78} (l) The tax consequences, for each party, of an award ofspousal support. A greater award of support would increase Elaine's tax consequences and decrease Charles' tax consequences.
 {¶ 79} (m) The lost income production capacity of either party thatresulted from that party's marital responsibilities. This factor weighs heavily in Elaine's favor. Elaine stayed at home with the parties' four children enabling Charles to advance in *Page 19 
his career. At the time of the divorce he was earning about $100,000 annually; whereas she had few marketable skills and was earning less than $5,000 per year.
 {¶ 80} (n) Any other factor that the court expressly finds to berelevant and equitable. As the trial court explained, the fact that Charles has to pay $415.22 per month for two years for Elaine's COBRA health care premiums certainly factors into the analysis as an element of support. However, it is not evident that Elaine will be able to secure medical benefits through her speculative future employment after this initial 24 months. She asked the trial court to require Charles to pay her COBRA premiums for 36 months since she had no foreseeable ability to secure health insurance on her own. (Tr., p. 77.)
 {¶ 81} In addition, Elaine points out that the Ohio Supreme Court has recognized that indefinite awards of spousal support may be appropriate in cases involving a marriage of long duration, parties of advanced age, or in the case where a homemaker spouse lacks opportunity to develop meaningful employment. Kunkle, supra, at paragraph one of the syllabus. However, where the evidence reflects that the payee spouse has the ability to work outside the home and be self-supporting, a spousal support award should include a termination date. Id.
 {¶ 82} Based on the foregoing, almost all of the factors weigh heavily in favor of a significant spousal support award in this case. Even with the speculative imputed income and the trial court's award, the parties still have a great disparity in income. Charles will earn about $88,760 after support payments and before taxes, and Elaine will receive $12,240 per year in support plus her imputed income for a *Page 20 
total of about $33,040 per year after support and before taxes. Although the trial court notes that the potential amount of Elaine's total spousal support award is significant at about $82,000, the court fails to recognize that Charles will earn more than this the first year of the parties' divorce. (April 27, 2006, Judgment Entry, p. 3.)
 {¶ 83} Further, the length of the parties' marriage, 36 years, combined with the standard of living to which the parties were accustomed, support a longer, probably indefinite, spousal support award. All of the factors are in Elaine's favor. Although the trial court recognizes the disparities in the parties' circumstances, its spousal support award is not reflective of the parties' actual situations and is not appropriate and reasonable under the circumstances in this case. Schultz v. Schultz (1996), 110 Ohio App.3d 715, 724,675 N.E.2d 55. Thus, the trial court abused its discretion in its spousal support award.
 {¶ 84} Appellant's third and final assignment of error alleges,
 {¶ 85} "THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO RETAIN JURISDICTION TO MODIFY THE SPOUSAL SUPPORT AWARD."
 {¶ 86} Appellant argues that the trial court should have retained jurisdiction in this case to address the spousal support award in the event of a change in circumstances for one of the parties pursuant to R.C. 3105.18(E)(1). R.C. 3105.18(E)(1) provides for the modification of a spousal support award in the event that the court determines that the circumstances of either party have changed and as long as it has reserved jurisdiction to modify the amount or terms of spousal support. *Page 21 
 {¶ 87} Again, the trial court awarded Elaine spousal support in the amount of $1,020 for 82 months. It specifically noted that it did not retain jurisdiction to modify the spousal support award. (July 14, 2004, Judgment Entry, p. 10.)
 {¶ 88} Appellant claims that this failure to retain jurisdiction was error based on the speculative nature of her ability to secure a job after the completion of her training; her future health concerns; and the uncertainty as to her ability to secure health benefits in the future.
 {¶ 89} Appellant cites Humphrey v. Humphrey, 11th Dist. No. 2000-A-0092, 2002-Ohio-3121, in support of this argument. InHumphrey the court concluded that the trial court did not err in retaining jurisdiction to modify the spousal support award. Said determination, however, must be based on the circumstance in each case. In Humphrey, the trial court's retention of jurisdiction was upheld on appeal based on the uncertainty surrounding the parties' imminent financial changes. The husband would be incurring additional expenses in finding a new home and the wife expected changes in her mortgage payment as well as a change in her income once she completed certain job training. Id. at ¶ 49.
 {¶ 90} In Orwick v. Orwick, 7th Dist. No. 04 JE 14, 2005-Ohio-5055, we noted that whether a trial court decides to retain jurisdiction to modify spousal support is within its discretion. However, we also stated, "[w]here a trial court orders spousal support for definite periods of relatively long duration without a reservation of authority to modify the amount of support due to a change of circumstances, the trial court may be found to have abused its discretion." Id. at ¶ 18, quoting Berthelot v. *Page 22 Berthelot, 154 Ohio App.3d 101, 2003-Ohio-4519, 796 N.E.2d 541. Whether an abuse of discretion has occurred is determined by the facts and circumstances of each case. Id. at ¶ 20.
 {¶ 91} As we noted in Orwick, the Berthelot court found an abuse of discretion in the trial court's failure to retain jurisdiction arising from a five-year spousal support award. Further, in Nori v. Nori (1989),58 Ohio App.3d 69, 73, 568 N.E.2d 730, the court of appeals found an abuse of discretion in the trial court's failure to reserve jurisdiction over a ten-year spousal support award. Orwick at ¶ 20.
 {¶ 92} It should be noted that Charles claims that Elaine has waived this argument on appeal since she did not raise it in her first appeal. However, since this issue is jurisdictional and arises from our prior reversal and remand, this waiver argument lacks merit.
 {¶ 93} As in Humphrey, we find that the trial court should have retained jurisdiction over this spousal support award. Again, it was not established that Elaine would even find a job if and when she completed her training. It was also unclear whether she would be able to afford or secure health care insurance after the initial 24 months. Finally, she was also anticipating purchasing a new home and incurring costs associated with her move while acknowledging that she undoubtedly would not qualify for a loan. Finally, we note that this matter requires a lengthy, probably indefinite, period of support. Accordingly, we find that the trial court abused its discretion in failing to retain jurisdiction over the support award in this case. *Page 23 
 {¶ 94} In conclusion, we find that the trial court abused its discretion in both the amount and duration of its spousal support award. Following our prior decision, the trial court added little explanation as to why the spousal support award could be seen as reasonable and appropriate in this case. Thus, we reverse the trial court's spousal support decision as unreasonable and inappropriate in light of the facts and circumstances in this case. On remand, the trial court should increase its award in both amount and duration and attempt to allow Elaine to maintain a standard of living that was established during the parties' long marriage. The court should also retain jurisdiction over the spousal support award.
 Vukovich, J., concurs. DeGenaro, P.J., concurs. *Page 1